# In re Robert A. LETTMAN, Respondent

## File A17 599 144 - Bradenton

*Decided November 5, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien convicted of an aggravated felony is subject to deportation regardless of the date of the conviction when the alien is placed in deportation proceedings on or after March 1, 1991, and the crime falls within the aggravated felony definition.

Joan Friedland, Esquire, Miami, Florida, for respondent

David Rubman, Esquire, Chicago, Illinois, amicus curiae for respondent[1]

James K. Grim, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, JONES, GRANT, and SCIALABBA, Board Members. Concurring and Dissenting Opinion: GUEN-DELSBERGER, joined by SCHMIDT, Chairman. Dissenting Opinion: ROSEN-BERG, Board Member.

FILPPU, Board Member:

In a decision dated December 12, 1996, an Immigration Judge found the respondent deportable as an alien convicted of an aggravated felony at any time after entry under section 241(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994).[2] The respon-

---

[1] The Board acknowledges with appreciation the thoughtful briefs which were submitted by the respondent, the Immigration and Naturalization Service, and the American Immigration Lawyers Association.

[2] We note that the distinction between deportation and exclusion proceedings was eliminated by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). Under the IIRIRA, an alien subject to a Notice to Appear issued on or after April 1, 1997, is placed in removal proceedings. The aggravated felony ground of removal is found at section 237(a)(2)(A)(iii) of the Act, 8 U.S.C, § 1227(a)(2)(A)(iii) (Supp. II 1996) (referring to an alien who is "convicted of an aggravated felony at any time after admission"). Currently, section 241 of the Act, 8 U.S.C. § 1231 (Supp. II 1996), relates to the detention and removal of aliens ordered removed.

dent appealed this decision. The Board dismissed the appeal on July 7, 1997. On August 4, 1997, the respondent filed a motion to reconsider. We will grant the respondent's motion to reconsider and issue a new decision in this case. Upon reconsideration, the respondent's appeal will again be dismissed.

## I. ISSUE

In his motion to reconsider, the respondent asserts that he should not be found deportable under section 241(a)(2)(A)(iii) of the Act because his aggravated felony conviction occurred before the November 18, 1988, enactment date of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ("ADAA"). He relies on the language set forth in section 7344(b) of the ADAA, 102 Stat. at 4471, which limited deportability under the former aggravated felony ground to convictions on or after November 18, 1988.

We conclude that an alien who was charged on or after March 1, 1991, with deportability for an aggravated felony conviction is subject to deportation, regardless of the date of conviction, if the crime fits within the aggravated felony definition. In reaching this decision, we find that section 602 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5077 ("1990 Act"), eliminated the date restriction on the aggravated felony ground set forth in the ADAA.

## II. CASE HISTORY

The respondent is a 37-year-old native and citizen of Jamaica who became a lawful permanent resident of the United States in 1968. On July 30, 1996, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221), which charged the respondent with deportability under section 241(a)(2)(A)(iii) of the Act. It was alleged that on January 23, 1987, the respondent was convicted in the Circuit Court in and for Broward County, Florida, of the offense of murder in the third degree. It is undisputed that the respondent's original sentence was reduced to 7 years, and that he served 2 years before being released on probation.[3]

The respondent appeared before the Immigration Judge and admitted

---

[3]The conviction documents, admitted as an exhibit by the Immigration Judge, are not in the record before us on appeal.

the factual allegations in the Order to Show Cause. However, he denied deportability and filed a motion to terminate the proceedings. The respondent argued that he was not deportable as charged because his conviction occurred before the November 18, 1988, enactment date of the ADAA. The Service filed a statement in opposition to the motion.

At a hearing on December 12, 1996, the Immigration Judge denied the respondent's motion to terminate. The Immigration Judge cited changes to the immigration law made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), which applied the definition of an aggravated felony to the enumerated crimes regardless of conviction date. *See infra* note 4. The Immigration Judge found the respondent deportable as charged and ineligible for relief from deportation, and ordered him deported to Jamaica.

The respondent filed an appeal. The Board affirmed the decision of the Immigration Judge in a short order dated July 7, 1997, which cited to *Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992).

The respondent subsequently filed this motion to reconsider. The respondent argues that the Board erred in upholding the deportation charge because his conviction occurred before the November 18, 1988, enactment date of the ADAA. The Board requested supplemental briefs from the parties and amicus curiae. In our request, we asked whether section 602(c) of the 1990 Act, 104 Stat. at 5081, had an effect on section 7344(b) of the ADAA. The Board also asked the parties to consider Federal circuit court law which addressed the effect of section 602(c) of the 1990 Act on the firearms deportation ground.

On review, the Board agrees with the respondent that our previous decision should be reconsidered in light of additional legal arguments. Therefore, the motion to reconsider will be granted. *See* 8 C.F.R. § 3.2(b) (1998). We conclude that the respondent is deportable as charged, although we employ a different analysis from that used in our previous decision. We will first set out the relevant statutory provisions and then explain the reasoning behind our decision.


III. SECTION 7344(b)(1988) AND SECTION 602(1990)


The aggravated felony ground of deportation was added by section 7344(a) of the ADAA, 102 Stat. at 4470, and was designated as section 241(a)(4)(B) of the Act, 8 U.S.C. § 1251(a)(4)(B) (1988). It provided for the deportability of an alien "convicted of an aggravated felony at any time after entry." *Id.* In section 7344(b) of the ADAA, it was stated that the amendment "shall apply to any alien who has been convicted, on or after the date of the enactment of this Act [November 18, 1988], of an

367

aggravated felony."[4]

The 1990 Act amended and redesignated the deportation grounds then found at section 241(a) of the Act, 8 U.S.C. § 1251(a) (Supp. II 1990). The aggravated felony ground was redesignated as section 241(a)(2)(A)(iii) of the Act, but the text was identical to that in the former version found at section 241(a)(4)(B) of the Act. *See Matter of Papazyan*, 20 I&N Dec. 568 (BIA 1992), We focus on section 602 of the 1990 Act, which was titled "Revision of Grounds for Deportation." Subsection 602(a) was called "Revised Grounds for Deportation," and it set out the newly reorganized deportation grounds. The section further stated as follows:

> (c) SAVINGS PROVISION.—Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. *Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.*

> (d) EFFECTIVE DATE.—The amendments made by this section, and by section 603(b) of this Act, shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991.

1990 Act §§ 602(c), (d), 104 Stat. at 5081-82 (emphasis added). The issue for consideration is whether the language of section 602 eliminated the temporal limitation set forth in section 7344(b) of the ADAA (the "convicted on or after" November 18, 1988, language), We conclude that it did. We first set out the arguments presented by the parties.

---

[4]The ADAA set out the definition of an aggravated felony at section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988), It included murder, drug-trafficking crimes, and weapon-trafficking violations. Subsequently, the list of crimes in section 101(a)(43) of the Act was expanded, and various effective dates were applied to amended definitions.

Most recently, the IIRIRA specified that "[n]otwithstanding any other provision of law (including any effective date), the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph." IIRIRA § 321(b), 110 Stat. at 628 (codified at 8 U.S.C. § 1101(a)(43) (Supp. II 1996) (final paragraph)). It also provided that the change to the aggravated felony definition would apply to "actions taken on or after the enactment of this Act, regardless of when the conviction occurred." IIRIRA § 321(c), 110 Stat. at 628.

Our decision today involves a crime which fell within the original definition of an aggravated felony. We therefore have not addressed the interaction between the prospective limitations which once existed in section 101(a)(43) of the Act, and the most recent changes to the aggravated felony definition.

## IV. THE ARGUMENTS PRESENTED

### A. The Position of the Respondent

The respondent argues that the issue of deportability should be analyzed under the two-part test set out in *Matter of A-A-, supra*. Under this analysis, the Board should first look at whether the respondent's crime fits the definition of an aggravated felony, and then examine whether the deportation ground applies. The respondent does not contest that his crime fits the definition of an aggravated felony. However, he argues that he is not deportable under the second prong of the test in *Matter of A-A-*, supra, due to section 7344(b) of the ADAA.

In his supplemental brief, the respondent maintains that the temporal limitation set forth in section 7344(b) of the ADAA has not been changed by section 602 of the 1990 Act. The respondent emphasizes the absence of any Board or judicial precedents which recognize that section 7344(b) has been repealed. He also points to the existence of post-1990 decisions which cite to section 7344(b) as an example of Congress placing a prospective limitation on a ground of deportability. *See, e.g., Matter of A-A-, supra*.

In response to the Board's question about the impact of section 602(c) of the 1990 Act, the respondent places importance on the facts that section 602(c) is called a "savings provision" and that the first sentence of section 602(c) specifically refers to former section 241(a) of the Act (1988) as set out prior to passage of the 1990 Act. The respondent also reads the term "such section" in the second sentence of section 602(c) to refer to that same pre-1990 Act version of section 241 of the Act. The respondent argues that this, in turn, would preserve section 7344(b) and its time limitations and would protect the respondent from deportation.

The respondent also argues that the Board is not bound by *Matter of Chow,* 20 I&N Dec. 647 (BIA 1993), *aff'd sub nom. Kin Sang Chow*, 12 F.3d 34 (5th Cir. 1993) (affirming Board without reference to section 602(c)). In *Matter of Chow,* the Board found that the temporal limitations set out in the ADAA for the firearms deportability ground were eliminated by the 1990 Act. The respondent argues that *Matter of Chow* does not dictate a result in the instant case because the 1990 Act substantively amended the firearms deportation ground, while the aggravated felony ground was simply renumbered. The respondent does not find any circuit court decision which would command a result different from that which he is advocating.

### B. The Position of AILA

The supplemental brief provided by the American Immigration Lawyers Association ("AILA") "fully adopts" the respondent's arguments. AILA also points out that it is important to recognize that, when enacting

the ADAA, Congress made a policy determination to protect long-term residents from convictions which predated that 1988 law.

This is reflected by provisions such as section 7344(b) of the ADAA. It is argued that absent a clear expression of congressional intent, the Board should not reject the ADAA provisions. AILA also finds it significant that the application of section 602(c) of the 1990 Act to the aggravated felony deportation ground is notably absent from Board and Federal court decisions and that the most recent changes to the immigration law do not address the 1988 temporal limitation.

### C. The Position of the Service

The Service maintains that upon the passage of the 1990 Act, the 1988 ADAA temporal limitation on the aggravated felony ground was eliminated. The Service would read "such section" in the second sentence of section 602(c) as referring to the version of section 241(a) of the Act that is set out in the 1990 Act. Therefore, section 602(c) would support an alien's deportability for a conviction predating November 18, 1988.

The exceptions would be if an alien's crime did not fit the definition of an aggravated felony, or if the alien was issued an Order to Show Cause before March 1, 1991. The Service asserts that the Board should also find guidance from Federal circuit court decisions which have addressed section 602(c) in the context of the firearms deportation ground.[5]

### V. THE DECISION OF THE BOARD

As stated earlier, we conclude that an alien placed in proceedings on or after March 1, 1991, is deportable by virtue of a conviction that falls within the definition of an aggravated felony, without regard to the prospective limitation originally enacted in the ADAA as part of the aggravated felony ground of deportability. We reach this conclusion for several reasons.

First, we have conducted a careful study of section 602 of the 1990 Act, and take guidance from the statute as a whole. Second, we consider the content of the second sentence of section 602(c) of the Act, and its possible interpretations. We have not found the respondent's argument in this area to be persuasive. We also examine the statutory precursor to section 602(c) of the 1990 Act, which is former section 241(d) of the Act, 8 U.S.C. § 1251(d) (1988). Finally, we consider the existing judicial precedent which has inter-

---

[5]A February 22, 1991, memorandum from the Service, contained in the record, does not discuss section 602(c) and ultimately provides no guidance on the issue before us.

preted section 602(c) in the context of the firearms ground. We are especially influenced by *Lopez-Amaro v. INS*, 25 F.3d 986 (11th Cir. 1994), *cert. denied*, 513 U.S. 1146 (1995), a decision issued by the controlling Federal circuit in this case. We first discuss section 602 of the 1990 Act.

## A. Section 602 of the 1990 Act

As previously mentioned, section 602(a) of the 1990 Act completely revised the deportation grounds that were found in section 241(a) of the Act.

The revised deportation grounds were reorganized into categories that grouped similar deportation grounds. For example, the criminal offenses were listed under section 241(a)(2) by the 1990 Act. The aggravated felony ground was accordingly placed at section 241(a)(2)(A)(iii) by the 1990 Act. The wording of the renumbered aggravated felony ground was identical to the prior ground at section 241(a)(4)(B) of the Act (1988). However, other deportation grounds were revised in content. *See, e.g.*, section 241(a)(2)(C) of the Act (1990) (including more firearms crimes than had been set out in the previous ground at former section 241(a)(14) of the Act (1988)).

Section 602(a) of the 1990 Act was therefore intended to replace former section 241(a) (1988) in its entirety. As stated by the House-Senate Conference Committee:

> The conference substitute provides for a comprehensive revision of all the existing grounds for exclusion and deportation, including the repeal of outmoded grounds, the expansion of waivers for certain grounds, the substantial revision of security and foreign policy grounds, and the consolidation of related grounds in order to make the law more rational and easy to understand.

*See* H.R. Conf. Rep. No. 101-955, at 119, 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793.[6]

## B. The Reading of Section 602(c) of the 1990 Act

Section 602(c) of the 1990 Act contains two sentences under the title "savings clause." The parties agree that the first sentence of section 602(c) preserves the Service's ability to charge certain aliens under deportation grounds as they existed before the 1990 Act. That first sentence directs that certain aliens will remain deportable if they were deportable under various paragraphs "of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act." 1990 Act § 602(c), It is

---

[6]Section 602(b) of the 1990 Act, 104 Stat. at 5081, was called ""Conforming Amendments to Section 241" and contained specific amendments and repeals.

the second sentence of section 602(c) which is the subject of dispute. It states:

> Except as otherwise specifically provided in such section or subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

1990 Act § 602(c).

We acknowledge from the outset that the second sentence of section 602(c) is difficult to decipher, even after considerable examination. In the end, we find it to be an ambiguous provision, which is capable of different readings, and we principally derive its meaning by looking for guidance beyond its literal language. A number of factors, however, point to the construction of the phrase "such section" that we adopt, namely, that "such section" refers to section 241. We do not accept, however, that "such section" was meant to reference the entire limiting clause of the prior sentence so as to refer to the version of section 241(a) "as in effect before the date of the enactment" of the 1990 Act.

We read the provision in question as mandating that, except as otherwise provided in section 241, *as amended in 1990*, an alien is deportable for an enumerated ground despite the date of entry or the date of the underlying facts which establish deportability. The other limitation is that the Order to Show Cause must be issued on or after March 1, 1991, as is specified in section 602(d), in order for the 1990 grounds to apply.

Our reading comports with our understanding that the purpose of section 602 of the 1990 Act was to completely revise the deportation grounds. With this in mind, we find it difficult to believe that Congress intended to revise the deportation grounds, but still have the former Act ultimately determine deportability. In other words, it makes no sense to enact a whole new provision, yet keep the former version perpetually intact.

Furthermore, our reading recognizes that Congress did intend for certain deportation grounds to be subject to time-based or other limitations, and that the limitations were set out in the text of the new section 241 itself. *See, e.g.*, section 241(a)(2)(A)(i)(I) of the Act (1990) (permitting the deportation of an alien who commits a crime involving moral turpitude within 5 years of entry); section 241(c) of the Act (1990) (providing limitations on the deportability of certain special immigrants); *see also* sections 241(a)(1)(E), (F), (G), (5) of the Act (1990). These are the provisions referred to by the "except as otherwise specifically provided" language.

We also reach our conclusion by studying alternative readings of section 602(c), and finding that they do not work as well. Specifically, we do not agree with the respondent's position that the second sentence of section 602(c) ultimately preserves former deportation grounds, which would

include the temporal limitations found in the 1988 ADAA.

We first address the respondent's assertion that the phrase "otherwise specifically provided" refers to the prior section 241 of the Act (1988) because the first sentence of section 602(c) refers to section 241(a) of the Act, "as in effect before the date of the enactment of this Act." This reference is appropriate in the first sentence, as its language clearly serves to preserve the deportability of aliens under deportation grounds as they previously existed. However, we do not agree that this limiting clause of the first sentence of 602(c) provides direction for how to read the phrase "such section" in the second sentence of section 602(c). This is because the two sentences of section 602(c) are separate provisions which cover different territory. The fact that they were placed under the same title does not compel the conclusion that they are intertwined in all respects. Furthermore, the title of section 602(c) as a "savings clause" does not mean that we must read the disputed statutory language in a manner that to us seems contrary to the overall thrust of the 1990 legislation.

Our reading of the second sentence of section 602(c) as a separate sentence, and not as a traditional savings clause, is buttressed by examination of former section 241(d) of the Act (1988),[7] which served to establish the retroactive application of specified deportation grounds. *See Mulcahey v. Catalanotte*, 353 U.S. 692 (1957); *Lehmann v. Carson,* 353 U.S. 685 (1957), It stated:

> Except as otherwise specifically provided in this section [241], the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated in subsection (a), notwithstanding (1) that any such alien entered the United States prior to the date of enactment of this Act, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act.

Section 241(d) of the Act (1988).

The language of former section 241(d) parallels the second sentence of section 602(c) and is identical in most respects. The subsequent repeal of section 241(d) by the Miscellaneous and Technical Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733 ("Technical Amendments Act"), confirms for us that the second sentence of section 602(c) is not intended to serve as a savings clause, but rather was intended to serve the same function as former section 241(d).

Finally, we reject the respondent's position because it defies common sense. The respondent would have us read the disputed sentence as stating

---

[7]Section 241(d) was repealed by section 307(k) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1756 ("Technical Amendments Act") (effective as if included in the 1990 Act).

that an alien is deportable except as otherwise provided in the 1988 version of section 241 of the Act. The result of this would be to have a completely revised set of deportation grounds, as set out in section 602(a), but to nonetheless allow the prior version of the deportation grounds at section 241 to remain intact, and to set limitations for the deportability of aliens. This reading does not make sense in light of Congress' wholesale revision of section 241(a) of the Act in 1990. Indeed, there would be no point in enacting a new statutory scheme if the intent was to keep the former version of the law in control whenever there was a difference between the old and the new. We cannot conclude that this was the intention of Congress.[8]

We reject the respondent's or any other reading of the second sentence of section 602(c) that would essentially invalidate the comprehensive changes made to section 241(a) by the 1990 Act.[9]

---

[8]For example, when Congress revised the alien smuggling deportation ground in the 1990 Act and the 1991 Technical Amendments Act, it clearly recognized that its changes would reach conduct predating the passage of the 1990 Act. *See* section 241(a)(13) of the Act (1988) (including a "for gain" requirement which was deleted by the 1990 Act); section 241(a)(1)(E) of the Act (1990); *see also* section 241(a)(1)(E)(ii) (including specific language addressing conduct before May 5, 1988, inserted by section 307(h)(4) of 1991 Technical Amendments Act, 105 Stat. at 1755). Any reading of section 602(c) which preserved the old law (including its "for gain" requirement) in alien smuggling cases would be in *direct* conflict with the language of section 241(a)(1)(E), as revised by the 1990 Act and the Technical Amendments Act.

[9]Board Member Guendelsberger's concurring and dissenting opinion fails to address the historical and logical reasons we have identified for concluding that the two sentences in section 602(c) are independent. It argues instead for a basic grammatical reading of the opening "such section" clause of the sentence. But, it fails to explain why a grammatical reading must include the limiting clause. Indeed, our reading is consistent with a grammatical reading, but one in which "such section" only refers to section 241, and not to the further limiting clause of the prior sentence.

Furthermore, in his dissent, Board Member Guendelsberger does not dispute that reading the opening clause to be a condition on the entire sentence would generate an absurd result, if "such section" were meant to be a reference to the pre-1990 version of the grounds for deportation. That reading would have the old law control whenever it differs from the new law, making enactment of the new provisions pointless. In an attempt to avoid this absurdity, the dissent "reorders" the structure of the second sentence of section 602(c), and contends that the opening clause only modifies, or "operates as an exception" to, the final "notwithstanding clause" of the sentence. This effort fails in a number of respects.

At the outset, the location of the opening clause within the sentence points to its application to the sentence as a whole. The opening clause, moreover, includes a reference to subsection (d) as one of its "exceptions." Importantly, subsection (d) did not operate "as an exception to the notwithstanding clause" alone. Rather, it operated as an exception to the new law in its entirety, by postponing the implementation of all aspects of the revised deportation grounds until March 1, 1991. In view of the substance of subsection (d), Congress could not logically have included a reference to it in the first clause of the sentence in question, while at the same time intending it to impact only on the scope or operation of the "notwithstanding" clause.

## C. Judicial Interpretation of Section 602(c)

We find further support in our interpretation of section 602(c) in the context of the firearms deportation ground. The language of the second sentence of section 602(c) of the 1990 Act has been addressed by the Federal courts. In *Lopez-Amaro v. INS, supra*, the United States Court of Appeals for the Eleventh Circuit addressed the question of whether the 1990 version of the firearms deportation ground applied retroactively to the respondent's 1983 conviction.[10] The court held that the language of section 241(a)(2)(C) of the Act (1990) applied to an alien convicted of a specified firearm crime at any time after entry. Furthermore, and most significantly, the court stated that "Congress explicitly intended this section to apply to aliens 'notwithstanding that . . . the facts, by reason of which the alien [is deportable], occurred before the date of the enactment of this Act.'" *Id.* at 988 (quoting 1990 Act § 602(c)), The court relied on section 602(c) to support this statement.

Therefore, the court recognized that section 602(c) of the 1990 Act stood to override the 1988 ADAA limitation for the firearms ground.[11]

---

Further, the dissent reads its restructured sentence to incorporate pre-1990 restrictions related to "the date of occurrence of events upon which deportability is based." It does not, however, explain how its own restructured statute may be construed to carry forward only such limitations as the effective date rule in the ADAA. The restructured statute would provide for the current deportability of an alien "notwithstanding that . . . (2) the *facts*" which make for deportability "occurred before the date of the enactment" of the 1990 Act, "except as otherwise specifically provided in" pre-1990 section 241. Not all the "facts" which give rise to current deportability, but would not have given rise to deportability under the pre-1990 law, are effective date limitations. Indeed, as we explained in footnote 8, an alien smuggler became deportable under the 1990 Act even if he or she acted without receiving any financial "gain." But the "for gain" requirement was a "fact" that was "otherwise specifically provided" for by the pre-1990 version of section 241 in order to establish deportability. The dissent simply fails to explain how its restructured statute will permit the selective importation of some portions of pre-1990 law, but not others, when the *facts* giving rise to deportability would not have led to deportability under prior law. And, without this selective importation, even the dissent's reordered statute has the effect of overriding part "(2)" of the "notwithstanding" clause, by preserving all aspects of the old law in cases where the facts leading to deportability occurred prior to the enactment of the 1990 Act.

[10]The background is that section 7348(a) of the 1988 ADAA, 102 Stat. at 4473, had expanded the types of firearm crimes that would be deportable offenses. Section 7348(b) of the ADAA stated that "[t]he amendment made by subsection (a) shall apply to any alien convicted, on or after the date of the enactment of this Act [November 18, 1988] . . . ." In 1990, Congress further expanded the types of crimes that would render an alien deportable for a firearms violation, and redesignated the ground as section 241(a)(2)(C) of the Act. *See* 1990 Act § 602(a).

[11]The only date limitation acknowledged by the court was that the Order to Show Cause must have been issued on or after March 1, 1991, in order to have the 1990 deportation grounds apply. *See* 1990 Act § 602(d).

Other courts have used this analysis in discussing the issue of when the firearms ground, as amended in 1990, can be applied to an earlier conviction. *See, e.g., Hamama v. INS*, 78 F.3d 233, 236 (6th Cir. 1996) (finding that the application of section 241(a)(2)(C) of the Act (1990) to past crimes reflected Congress' intent, and was in accordance with due process restrictions on retroactivity; also citing section 602(c)); *United States v. Yacoubian*, 24 F.3d 1 (9th Cir. 1994) (recognizing that section 602(c) of the 1990 Act supported the deportability of an alien who was convicted for a firearms offense before the crime was added to the Act in 1990).

The court in *Lopez-Amaro v. INS, supra*, did not discuss the aggravated felony deportation ground.[12] However, the court's analysis applies equally and supports our holding that section 602(c) also overrides the temporal limitation on the aggravated felony ground which was set forth in the ADAA. This is because the statutory provisions in the ADAA which dealt with the aggravated felony and firearms grounds are identical in that they limited each revised ground to convictions on or after November 18, 1988. *See* ADAA §§ 7344(b), 7348(b). Therefore, it is logical to find that section 602(c) would equally eliminate the 1988 temporal limitations for the firearms and the aggravated felony grounds. To conclude otherwise would require a basis for distinguishing the application of section 602(c) to the different deportation grounds, which is not apparent upon reading either the 1988 or 1990 statutes.

The respondent has argued that the effect of section 602(c) on the firearms ground can be distinguished from its effect on the aggravated felony ground because the changes to the firearm ground involved "substantive" changes, while the aggravated felony ground was merely renumbered. However, there is no support for making this distinction under any consistent reading of section 602(c). There is nothing in the language of section 602(c) which classifies the renumbered deportation ground into separate categories. Indeed, the respondent's argument would require two different readings of section 602(c) of the Act. That is, one reading which referred to former section 241 of the Act (1988) (in place of "such section"), and one which inserted the new 1990 version of section 241 in that position. There is no authority for reading the statute in different ways, as is proposed by the respondent. We are therefore not convinced by this argument.[13]

---

[12]Neither did the other circuit court cases which have been cited for providing section 602(c) analysis include such discussion.

[13]Furthermore, it is not clear that the 1990 changes to the aggravated felony and firearms grounds are distinguishable, as argued by the respondent. Both involved the addition of new crimes. However, the expansion of the aggravated felony ground was done through the definitional section found at section 101(a)(43) of the Act. The new firearms crimes were included directly within the deportation ground. Therefore, both deportation grounds were significantly changed, but it was just done through a different scheme.

### D. Final Arguments

The respondent also relies on our decision in *Matter of A-A-, supra*, and specifically on the discussion of section 7344(b) of the ADAA in that case. *See id.* at 497, The reference there, however, is for the illustrative purpose of showing what Congress does when it wants to set a prospective limitation. *See also Matter of Gomez-Giraldo*, 20 I&N Dec. 957, 959 (BIA 1995). The case does not discuss section 602(c), or find that it cannot be held as a basis for finding an aggravated felon deportable for a pre-1988 conviction. The case therefore does not present an obstacle to our decision today. We find this similarly true for Federal circuit court cases which cite to section 7344(b) of the ADAA. *See, e.g., Scheidemann v. INS*, 83 F.3d 1517 (3d Cir. 1996); *Hamama v. INS, supra*, at 236.

Our ruling today, moreover, is in conformance with the general principles set out in *Matter of A-A-, supra*. In *Matter of A-A-*, we emphasized the importance of separately analyzing (1) when the definition applies to an alien's crime, and (2) when an aggravated felony can be used for deportability and as a bar to relief. In regard to the nature of his conviction, the respondent conceded that his crime fit the definition of an aggravated felony.[14] Therefore, this prong of the test is satisfied. We also fulfill the second part of the test, because we look at the content of the deportation ground itself to determine whether it applies to the respondent. Our examination tells us that the respondent's conviction for an aggravated felony does support his deportability.

Finally, as pointed out by the respondent, the Board failed to mention section 602(c) of the Act in *Matter of Chow, supra*, dealing with the 1990 Act changes to the firearms ground. Indeed, we used a completely different rationale, which is not necessary upon recognition of the effect of section 602(c) of the Act. We therefore conclude that, while *Matter of Chow* affords us little guidance, it does not provide a barrier to the holding we set forth in the instant decision.

---

[14]The respondent's conviction fit the aggravated felony definition under the original definition set out at section 101(a)(43) of the Act. Further, under the IIRIRA, the aggravated felony definition is not limited by the date of a conviction. *See supra* note 4; *see also* 8 C.F.R. § 1.1(t) (1998) (stating that the aggravated felony definition applies to any proceeding, application, custody determination, or adjudication pending on or after September 30, 1996).

The Immigration Judge appeared to base his deportability finding on the aforementioned IIRIRA provisions. However, these provisions are limited to the definition, and the specific deportation ground involved needed to be further examined before deportability could be upheld.

## VI. CONCLUSION

In sum, we find that section 602 of the 1990 Act dictates that any alien who has been convicted of a crime defined as an aggravated felony, and who was placed in deportation proceedings on or after March 1, 1991, is deportable regardless of when the conviction occurred. The respondent is therefore deportable as charged. He has not established any eligibility for relief from deportation. The respondent's appeal will accordingly be dismissed. Appropriate orders will be entered.

**ORDER:** The motion to reconsider is granted, and the July 7, 1997, decision of the Board is vacated.

**FURTHER ORDER:** The respondent's appeal is dismissed.

*CONCURRING AND DISSENTING OPINION:* John Guendelsberger, Board Member, in which Paul W. Schmidt, Chairman, joined

I concur in the result reached by the majority decision because this case, which arises in the jurisdiction of the United States Court of Appeals for the Eleventh Circuit, is controlled by the holding in *Lopez-Amaro v. INS*, 25 F.3d 986 (11th Cir. 1994), *cert. denied*, 513 U.S. 1146 (1995).

Had this case arisen in a jurisdiction in which we were not bound by existing circuit law, however, I would find that the savings clause in the second sentence of section 602(c) of the Immigration and Nationality Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5081 ("1990 Act"), refers to and saves the limitation on deportability contained in section 7344(b) of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4471, ("ADAA"), for convictions occurring prior to November 18, 1988. I write separately, therefore, because I disagree with that portion of the majority decision regarding the interpretation of the savings provision in the second sentence of section 602(c) of the 1990 Act.

## I. THE BOARD IS BOUND BY CONTROLLING CIRCUIT LAW IN THIS CASE

In *Lopez-Amaro v. INS, supra*, the Eleventh Circuit addressed the effect of section 602(c) of the 1990 Act upon section 7348(b) of the ADAA, 102 Stat. at 4473. Section 7348(b) provided that the deportation ground for conviction of possession of a firearm applied only to convictions occurring "on or after the date of the enactment of this Act [November 18, 1988]." The court found that the 1990 amendments replaced the former deportation ground for firearms convictions in section 241(a)(14), 8 U.S.C. 1251(a)(14) (1988), with the newly enacted section 241(a)(2)(C), 8 U.S.C. 1251(a)(2)(C) (Supp. II 1990), and held that "the effective date restrictions

found in the old statute no longer apply." *Id.* at 988 (footnote omitted).

Although the court in *Lopez-Amaro* did not directly address the aggravated felony ground for deportation, the temporal limitation in section 7348(b) was phrased in nearly identical terms to section 7344(b) under consideration in the instant case. I do not find a meaningful basis for distinguishing the issue presented in *Lopez-Amaro* in regard to firearms convictions and the issue before us involving the aggravated felony ground for deportation. Therefore, I find that we are bound by the decision in *Lopez-Amaro*, and the fact that the respondent's conviction occurred prior to November 18, 1988, does not prevent him from being deported pursuant to section 241(a)(2)(A)(iii) of the Act (1990).

As discussed below, I find that the respondent and amicus curiae have presented compelling arguments in this case that section 602(c) of the 1990 Act is a savings provision which operates to save the temporal restriction on deportation contained in section 7344(b) of the ADAA. I would therefore limit our holding in this case to the Eleventh Circuit and wait until the issue arises in another circuit before determining whether to extend the rule nationwide.

## II. SECTION 602(c) OF THE 1990 ACT SAVES SECTION 7344(b) OF THE ADAA.

At the time the respondent was convicted in 1987, there was no aggravated felony ground for deportation. This ground was enacted in the Anti-Drug Abuse Act of 1988. Section 7344(b) of this Act specifically limited deportability under that ground to convictions for aggravated felonies which occurred on or after November 18, 1988. The issue presented in this case is whether section 602(c) of the 1990 Act saved or repealed section 7344(b) of the ADAA.

Section 602(c) of the 1990 Act is entitled "SAVINGS PROVISIONS" and consists of two sentences. The first sentence  provides:

> Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable.

The purpose of this sentence is to make clear that persons convicted prior to the enactment date of offenses described in four designated paragraphs of the pre-1990 version of section 241 will remain deportable without regard to the 1990 amendments. These paragraphs, which refer to convictions under the Alien Registration Act and a number of other crimes, are "saved" insofar as convictions which occurred prior to the enactment of the

379

1990 law are concerned.

It is the second sentence of section 602(c) which bears on resolution of the issue presented in this case. This sentence provides:

> *Except as otherwise specifically provided in such section* and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

1990 Act § 602(c)(emphasis added). Putting aside the introductory exception clause for a moment, this sentence is a directive that the deportation grounds of section 241(a), as amended by the 1990 Act, will apply without regard to whether the alien's entry or facts giving rise to deportability occurred prior to the enactment date of the 1990 Act.

The exception clause, however, then overrides this general rule as to timing of entry or events on which deportability is based when "specifically provided in such section and subsection (d)." 1990 Act § 602(c).

Turning first to subsection (d) of section 602, this subsection contains an effective date provision for the 1990 Act which states that "[t]he amendments made by this section, and by section 603(b) of this Act, shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991." 1990 Act § 602(d), 104 Stat. at 5082. Thus, for proceedings already underway before March 1, 1991, the pre-1990 version of the Act remains applicable.

It is the meaning of the other exception in the introductory clause to section 602(c) which is critical to the outcome in the instant case.[1] The meaning of this provision, as the majority recognizes, turns upon the interpretation of the term "such section" in that clause. The majority reads "such section" as a reference to section 241, as amended by the 1990 Act. Such a reading violates basic rules of grammar and fundamental principles of statutory construction. The majority would rewrite the exception clause of the second sentence of section 602(c) to reach a result it believes is consistent with the "overall thrust" of the statute. I do not believe that we have

---

[1]Until this case, neither the Board nor the courts that have considered the issue appear to have addressed the meaning of the introductory clause in the second sentence of section 602(c), The Eleventh Circuit, in reaching its holding in *Lopez-Amaro*, referred only to the "notwithstanding" clause of the second sentence of section 602(c), It is not clear from the decision in *Lopez-Amaro* whether the arguments presented by the respondent and amicus curiae in this case as to the effect of the exception clause in the second sentence were presented to or considered by the Eleventh Circuit in that case. Whether these arguments were presented or not, we remain bound by the holding in *Lopez-Amaro*.

authority to reconstruct the statutory language in this way.

Basic rules of grammar indicate that the term "such section," as used in the introductory clause to the second sentence of section 602(c) refers to section 241 as it existed prior to the amendments of the 1990 Act. First, the sentence itself uses "such section" in juxtaposition with "such section, as amended by this section [section 602]." Had Congress intended the second sentence of section 602(c) to have the meaning proposed by the majority, it would not have juxtaposed "such section" with "the provisions of such section as amended by this section." It could have simply stated that the amended version of section 241 would apply without regard to entry or other factual events before the date of enactment, except as otherwise specifically provided in the amended version of section 241 or in subsection (d).[2] Although the heading of section 602(c) is "SAVINGS PROVISIONS," the majority acknowledges that it would read "such section" in the introductory clause to prevent it from saving any provision in the pre-1990 section 241.

Additionally, the meaning of "such section" is informed by reference to the last antecedent use of the term "section."[3] In this case, the immediately preceding reference to "section," is to "section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act" (in the first sentence of section 602(c)). Thus the natural and grammatical reading of "such section" is that it refers to the pre-1990 version of section 241.

The majority posits that reading "such section" as a reference to the pre-1990 version of section 241 would lead to an absurd result because it would "keep the former version of the law in control whenever there was a difference between the old and the new." But this conclusion is based on the faulty premise that the exception clause operates independently of the notwithstanding clause. What the majority fails to recognize is that the introductory clause operates as an exception to the notwithstanding clause, and its operation is governed by the scope of the notwithstanding clause.

The impact of the exception clause is clearer if the sentence is reordered so that the exception clause is placed after the notwithstanding clause, upon which it operates, as follows:

---

[2]The provision would have been formulated as follows: "Except as otherwise specifically provided in such section, as amended by this section, and subsection (d), the provisions of such section, as amended, shall apply to all aliens described in subsection (a) thereof notwithstanding that . . . ."

[3]"'Such' represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent." *Blacks' Law Dictionary* 1284 (5th ed. 1979).

> The provisions of such section [pre-1990 section 241], as amended by this section [section 602], shall apply to all aliens described in subsection (a) thereof [section 241(a) as amended by section 602(a)]
>
> *notwithstanding that* (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act
>
> *except as* otherwise specifically provided in such section [pre-1990 section 241] and subsection (d).

When the notwithstanding clause is considered in tandem with the exception clause, as it must be, it becomes apparent that the exception clause does not save every difference between the grounds for deportation in the pre-1990 and post-1990 versions of the Act. What it does save are those specific references to limitations on entry in the pre-1990 version of section 241 which restrict deportability based upon (1) the date of entry or (2) the date of occurrence of events upon which deportation is based. One such reference in the pre-1990 version of section 241 is the mandate of section 7344(b) of ADAA which specifically limits deportation for aggravated felony convictions to "any alien who has been convicted, on or after [November 18, 1988]."

Even if, as the majority argues, there is some ambiguity in regard to whether section 602(c) of the 1990 Act saves section 7344(b) of the ADAA, doubts in this regard should be resolved in favor of the alien. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (noting the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); *INS v. Errico*, 385 U.S. 214, 225 (1966) (indicating that doubts as to the correct construction of the statute should be resolved in the alien's favor); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (stating that any doubts regarding the construction of the Act are to be resolved in the alien's favor); *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989).

Section 7344(b) of the ADAA specifically relates to the date of occurrence of facts upon which deportation for conviction as an aggravated felony is based. Notably, it precludes deportation unless the alien was "convicted, on or after [November 18, 1988]." In the absence of controlling circuit law, I would find that this provision is saved by the second sentence of section 602(c) of the 1990 Act.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

The question presented is whether a conviction that occurred before November 18, 1988 can be relied on to sustain a charge of *deportability* for an aggravated felony conviction under a statutory section—section 241(a)(4)(B) of the Act, 8 U.S.C. § 1251(a)(4) (1988), later recodified in

1990 as section 241(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1251(a)(2)(A) (Supp. II 1990)—that no longer exists except in cases initiated prior to April 1, 1997? In answering this question in the affirmative, the majority dramatically alters the Board's longstanding interpretation of a 10-year-old, now arguably defunct, law relating to the date after which an alien convicted of an aggravated felony will be considered *deportable*.

We recognized previously that a conviction for an aggravated felony incurred deportability only when the conviction occurred on or after November 18, 1988. *Matter of A-A-*, 20 I&N Dec. 492, 497 (BIA 1992) (contrasting the lack of any temporal limitation in the 1990 amendments restricting eligibility to apply for a waiver under section 212(c) of the Act, 8 U.S.C. § 1182(c) (Supp. II 1990), with the existing temporal limitation on the aggravated felony ground of deportability); *see also Matter of Melo*, 21 I&N Dec. 883, at 885 (BIA 1997) (distinguishing the effect of a 1987 and a 1989 aggravated felony conviction in a custody determination); *Matter of Gomez-Giraldo*, 20 I&N Dec. 957 (BIA 1994) (affirming the distinctions between deportability and waiver eligibility made in *Matter of A-A-, supra*). The majority apparently is unwilling either to admit the practical consequences of our new ruling, which essentially reverses the position we have taken for 8 years, or to acknowledge the conflicting analysis (or the lack of one) underlying our prior rulings. Ignoring the proverbial elephant in the bathtub, notwithstanding the overwhelming smell of peanuts, the majority insists that, really, there is no need to distinguish our prior precedent because we never addressed this precise aspect of the question before.

If that were not enough to give one pause in accepting the majority's new analysis as a reasoned and permissible one, the substantive bases on which the majority seeks to rationalize a contradictory interpretation of a now-superseded statutory change made 8 years ago are questionable. We not only failed to recognize the change that the majority now insists took place, or to issue any precedent to that effect, but I venture to guess that we issued numerous decisions invoking the interpretation we today overrule or modify, sub silentio. As discussed below, I imagine that countless deportation proceedings were not initiated by the Immigration and Naturalization Service because of its similar interpretation. This now-rejected interpretation also was adopted consistently by the circuit courts that addressed the question, in large part based on deference to the Board's reading of the statute as a reasoned one.

The majority now proposes to read an ambiguous savings clause provision of an 8-year-old legislative enactment in a way that is diametrically opposed to the interpretation that has been followed regularly, without providing any substantial reason for such a change. Furthermore, although I agree generally with the interpretation of the relevant statutory language advanced by my concurring and dissenting colleagues, Guendelsberger and Schmidt, I disagree that the decisions of the United States Court of Appeals

for the Eleventh Circuit compel acquiescence to the majority's post hoc interpretation. Consequently, I dissent from the majority opinion, and concur, but only in part, with the concurring and dissenting opinion, for the reasons discussed below.

## I. BACKGROUND UNDERLYING THE ISSUE PRESENTED

Providing the reasons for the position I take in this dissenting opinion requires placing the aggravated felony issue presented in historical context.[1] The foundation for this context is that, prior to November 18, 1988, the Immigration and Nationality Act included three principal catch-all categories of immigration violations related to crimes that would trigger excludability or deportability. *See, e.g.*, Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163, codified as 8 U.S.C. § 1101, *et seq.* (1952). These criminal offense categories, which applied differently in the exclusion and deportation context, related to "crimes involving moral turpitude," "drug" offenses (later referred to as "controlled substance" offenses), and certain firearms convictions.

Section 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4469-70 (enacted Nov. 18, 1988) ("ADAA"), introduced a new classification of convictions in addition to these three principal ones: the aggravated felony. *The definition* of the term "aggravated felony," later codified as section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988), has been understood consistently to be distinct from *its applicability* to particular statutory provisions that trigger certain consequences, or "disabilities," under the immigration law. *See* ADAA § 7342; *Matter of A-A, supra*, at 499; *Matter of Reyes,* 20 I&N Dec. 789 (BIA 1994) (examining the limitations imposed by the individual terms of applicability that attached to the separate provisions involving voluntary departure, suspension of deportation, and good moral character); *see also* Amended Definition of Aggravated Felony, Op. Off. General Counsel 96-16, (Dec. 3, 1996) (citing *Matter of A-A-*, *supra*, as the "leading case" for resolving the two "related but not identical questions" of whether a conviction is for an aggravated

---

[1]The origins of the "aggravated felony" concept and the course it has taken since its introduction into the Immigration and Nationality Act 10 years ago by the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ("ADAA"), in terms of its effect on individual immigrants, their families, and United States immigration policy, is a subject well worth far greater scrutiny than it is possible to undertake here. For purposes of this dissent, however, I must presume some understanding of the origins of our 100-year-old policy of exclusion and expulsion of "undesirables" generally, and during the past 10 years in relation to the aggravated felony category. *See* Kesselbrenner and Rosenberg, *Immigration Law and Crimes* (West Law Group 1998).

felony and what consequences result from that conviction).

In *Matter of A-A, supra*, the Board addressed the applicability of section 101(a)(43) of the Act, which lacked a specifically articulated effective date and had no temporal provision attached to it, to ineligibility for a waiver under section 212(c) in the case of a lawful permanent resident who had served more than 5 years' imprisonment for an aggravated felony conviction. The Board read silence on Congress' part in relation to the definitional section and certain other subsections relating to aggravated felony convictions as indicating applicability was unlimited and applied to convictions occurring before the date of the enactment creating the category. *See id.* at 497 (indicating that when Congress wished to limit the reach of a statute to a prospective application it did so expressly); *see also Matter of Gomez-Giraldo, supra*. We emphasized that, "[a]ccordingly, where Congress attaches disabilities to an alien convicted of an aggravated felony, those disabling provisions are properly read as including all such convictions, regardless of when conviction occurs, *unless Congress explicitly provides otherwise*." *Matter of A-A-*, *supra*, at 499 (emphasis added).[2]

The Board acknowledged that many of the originally enacted ADAA provisions pertaining to the consequences or "disabilities" resulting from conviction of an "aggravated felony" were limited by implicit or explicit temporal provisions. *Matter of A-A-, supra*, at 495-98 (relying on the amendments made by the ADAA as a basis on which to construe the effect of the 1990 change to section 212(c) of the Act). We recognized that express language in some sections of the ADAA explicitly restricted application of the provision to convictions occurring "on or after" November 18, 1988. *Matter of A-A-, supra*, at 499 n.15;[3] *see also* Aggravated Felony:

---

[2]Although not necessary to resolve for purposes of this opinion, the overbroad declaration that congressional silence supports an essentially retroactive application of a statutory provision appears to me to stand the accepted retroactivity doctrine on its head. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997); *see also Lindh v. Murphy*, 521 U.S. 320 (1997); *Landgraf v. USI Film Products,* 511 U.S. 244 (1994); *Henderson v. INS,* 157 F.3d 106 (2d cir. 1998), *cert. denied, sub nom Reno v. Navas,* 119 S.Ct. 1141 (1999) (2d Cir. 1998); *Goncalves v. INS*, 144 F.3d 110 (1st Cir. 1998), *cert. denied*, 119 S.Ct. 1140 (1999). *But see Matter of Soriano,* 21 I&N Dec. 516 (BIA 1996; A.G. 1997) (treating applications of a new law to circumstances occurring before its enactment as not being retroactive); *but cf. Matter of Gomez-Giraldo, supra*, at 960 (affirming the restrictions on former section 212(c) of the Act as being "fully consistent with the Supreme Court's recent holdings in *Landgraf v. USI Film Products*"),

[3]*See, e.g.*, ADAA § 7343 (mandating that an alien convicted on or after November 18, 1988, be taken into custody and not released, and restricting eligibility for voluntary departure in such cases); ADAA § 7344, 102 Stat. at 4470-71 (rendering deportable any alien convicted of an aggravated felony at any time after entry occurring on or after November 18, 1988); ADAA § 7347, 102 Stat. at 4471-72 (providing expedited deportation proceedings for person convicted of an aggravated felony on or after November 18, 1988.

Applicability to Convictions Prior to November 18, 1988, Op. Off. General Counsel 91-3 (Feb. 22, 1991) (concluding that section 7343 of the ADAA, 102 Stat. at 4470, applies "only to those aliens 'convicted' of an aggravated felony on or after November 18, 1988"). Prominent among the sections of the ADAA that the Board recognized as having an explicitly prospective "on and after" November 18, 1988, applicability date is the aggravated felony ground of deportability, codified originally as section 241(a)(4)(B), which encompassed convictions that constitute an aggravated felony as defined in section 101(a)(43) of the Act.

Congress' amendment of the statute in 1990 made both substantive and housekeeping changes that are relevant to our inquiry here. First, in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (enacted Nov. 29, 1990) ("1990 Act"), the definition of what constituted an aggravated felony was expanded prospectively to include additional convictions, occurring on or after November 29, 1990, for crimes generically referred to as money laundering and crimes of violence, for which a sentence of more than 5 years was imposed. *See* 1990 Act § 501(b), 104 Stat. at 5048.[4] Second, certain grounds of deportation related to controlled substance and firearms convictions and security violations were substantively amended. Finally, without regard to whether there was any change whatsoever in applicability, each ground of deportation, including those related to manner of entry, immigration status, and other document violations, criminal violations, security violations, and other violations that were longstanding grounds of deportation, was recodified across the board. *See* 1990 Act § 602(a), 104 Stat. at 5077.

Section 241(a)(4)(B) was among those renumbered in this reorganization of the "General classes of deportable aliens" under section 241 of the Act. *Matter of A-A-, supra*, at 497 n.9 (noting that the 1990 Act "revised and redesignated" the section as 241(a)(2)(A)(iii), but not distinguishing its continuing applicability as before), The content of this particular deportation ground remained intact and was not touched either in terms of its content or its reach; nothing about the substantive applicability of this provision was altered or amended in any way. Nowhere has the aggravated felony ground of deportation been construed or otherwise treated as though the revisions and redesignations contained in section 602 amending the 1990 Act affected or modified its substantive content or applicability only to convictions after November 18, 1988.

---

[4]Subsequent to the 1990 Act and our decision in *Matter of A-A-, supra*, "Congress further expanded the definition of the term 'aggravated felony' in the Immigration and Nationality Technical Corrections Act of 1994 . . . [which] shall apply prospectively only . . . 'to convictions entered on or after the date of enactment of this Act.' Section 222(b) of the 1994 Act, 108 Stat. at 4322." *Matter of Gomez-Giraldo, supra*, at 959 n.1 (citation omitted).

## II. REASONABLE AND PERMISSIBLE INTERPRETATION
## OF THE STATUTE

In my view, a reasonable and permissible interpretation of section 602(c), an ambiguous section of the statute, requires that we either follow or distinguish our own precedent and properly acknowledge the scope of controlling circuit law. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also* Ronald M. Levin, *The Anatomy of Chevron: Step Two Reconsidered*, Symposium on Administrative Law, 72 Chi.-Kent L. Rev. 1253, 1263 (1997)(asserting that as the Court referred in other passages of *Chevron* to "reasonableness," an interpretation that is "permissible" might be one that, under the "hard-look doctrine" applicable to review of agency decisions, would not be arbitrary and capricious).

The majority cites legislative history from the House-Senate Conference Committee that I presume they believe supports their position. Unfortunately, it is not persuasive. The quotation they select to underscore their position that the revision and redesignation stripped former section 241(a)(4)(B) of its November 18, 1988, effective date when it was recodified as 241(a)(2)(A)(iii) does not indicate anything of the sort, but only addresses the fact that Congress' principal purpose was meant to "make the law more rational and easy to understand," and specifies it was intended to "repeal . . . outmoded grounds," and to allow "consolidation of related [deportation] grounds," and "expansion of waivers" of deportability. H.R. Conf. Rep. No. 101-955, at 119, 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793.

Reading the legislative change to strip the November 18, 1988, effective date restriction from the aggravated felony ground of deportability merely because of a recodification of deportation grounds generally accomplishes none of these stated objectives. The aggravated felony ground was neither repealed nor consolidated, nor made the subject of any expanded waiver provision. It was simply one of many provisions reorganized into a broad subsection that grouped together criminal offenses constituting grounds of deportability.

The limited legislative history neither addresses section 602(a) directly nor constitutes evidence of a "ground-up" revision of all deportation provisions. The majority's "understanding that the purpose of section 602 of the 1990 Act was to completely revise the deportation grounds" is without support. Such a comprehensive type of revision is what occurred recently in section 306 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-607 (Sept. 30, 1996) ("IIRIRA"), and had that occurred in 1990, there would have been little need for Congress to take the sweeping actions it took in the IIRIRA. *See, e.g.*, IIRIRA, title III ("Inspection,

Apprehension, Detention, Adjudication, and Removal of Inadmissible and Deportable Aliens").

I emphasize that in the course of its consolidating and reorganizing the placement of the deportation grounds in the 1990 Act, Congress made some quite significant substantive changes to the content of other deportation grounds in the statute, but left the text of the aggravated felony ground of deportability untouched. Moreover, while Congress added to the list of convictions defined as aggravated felonies, it did not roll back the effective date for aggravated felonies for all purposes, but instead attached prospective effective dates to the new convictions included in the list. This is a far cry from recent, clearly deliberate changes in the statute, in which Congress went far beyond a mere recodification of deportation grounds, but indicated explicitly, for example, that it intended to retroactively apply all "actions taken" in relation to the aggravated felony grounds as a basis for removal, without regard to the date the conviction occurred, and wished to insure that deportation consequences would not be escaped once a plea or judgement of guilty was entered and some form of punishment or limitation on an alien's liberty was imposed. *See* IIRIRA §§ 321(c), 322, 110 Stat. at 3009-628; H.R. Conf. Rep. No. 104-828, at 224 (1996) ("Joint Explanatory Statement"); *see also* 8 C.F.R. § 1.1(t) (1998).

## A. Section 602(c)

I adopt the analysis advanced by concurring and dissenting members Guendelsberger and Schmidt. As I see it, a savings provisions saves. *See Black's Law Dictionary* 1205 (5th ed. 1979) ("*Ordinarily a restriction in a repealing act, which is intended to save rights, pending proceedings, penalties,* etc., from the annihilation which would result from an unrestricted repeal. . . . Such clause continues in force the law repealed as to existing rights." (defining savings clause) (emphasis added)).

The purpose of a savings clause is to preserve the previously existing state of affairs, or status quo, when such would be changed by a statute's amendment. *United States v. Menasche*, 348 U.S. 528, 532 (1955) (limiting substantive changes made by amendments in the immigration law to proceedings initiated after enactment of the new law). Under the language of such a clause in the Immigration and Nationality Act of 1952, the United States Supreme Court interpreted a savings clause to apply where something in the new law introduces a change, possibly affecting one's status under the old law. *See Shomberg v. United States*, 348 U.S. 540, 546 (1955),

Stated simply, as my concurring and dissenting colleagues put it, the term "such section" in section 602(c) most reasonably refers to the substantive content of former provisions of section 241 that were not changed substantively by the revision and redesignation made to the deportation grounds made in the 1990 Act. Although the aggravated felony ground of

deportability was recodified as section 241(a)(2)(A)(iii), nothing about the specified substantive applicability of this provision was altered or amended in any way. Nowhere has the aggravated felony ground of deportation been construed or otherwise treated as though the revisions and redesignations contained in section 602 amending the 1990 Act affected or modified its substantive content or its applicability only to convictions after November 18, 1988.

## B. Longstanding Agency Precedent and the 1990 Act

The majority's position is difficult to comprehend, as we already have recognized that section 602 of the Immigration Act of 1990 "revised and redesignated" the grounds of deportability. *Matter of A-A-, supra*, at 492 n.1. Each existing ground of deportability was redesignated numerically in a complete recodification of section 241 of the statute that was meant to better classify subsections by category, but only certain grounds were actually altered or amended in substance. *See* 1990 Act § 602(a). The section that governs deportability for conviction of an aggravated felony was not changed at all in substance, or, in my view, in applicability.

The majority's current position essentially abandons this conclusion. It rests on the view that (1) although no substantive change was made to the aggravated felony ground of deportation in 1990, and 2) although no change was made to the specific individually designated effective date on which this provision was made applicable in 1988, the scope of its applicability was changed nevertheless, because Congress recodified the subsections of the Act and at the same time substantively amended some other subsections. This is at odds with our existing precedent.

The Board has expressly recognized the difference between those provisions that were renumbered or redesignated by section 602(a) of the 1990 Act, and those that were substantively amended as to their content, and has treated these qualitative and quantitative changes differently. In *Matter of Chow*, 20 I&N Dec. 647 (BIA 1993), *aff'd sub nom. Kin Sang Chow v. INS,* 12 F.3d 34 (5th Cir. 1993), discussing the change worked by section 602(a) in relation to section 241(a)(14) of the Act and its redesignation as section 241(a)(2)(C), the Board found that the statutory change

> significantly amended the substance of the provisions by increasing the number of weapons offenses . . . and replacing the [former] enumeration of the specific types of weapons . . . with one all-encompassing definition of a "firearm or destructive device." *In essence, section 241(A)(2)(C) of the Act represents the enactment of a new statutory provision that completely supersedes all former versions* of that deportation ground.
>
> . . . *Since the 1990 Act completely substituted* section 241(a)(2)(C) of the Act for section 241(a)(14), we conclude that *it also made irrelevant* any restrictions on the applicability of the provisions of the former statute placed on it by the 1988 Act.

389

*Id.* at 650-51 (emphasis added); *see also Kin Sang Chow v. INS, supra*, at 37, 38 (agreeing that the 1990 Act "completely supersedes all former versions of legislation dealing with deportation *for firearm offenses*" and that "the BIA was justified in finding that Chow violated § 241(a)(2)(C) and that the BIA's decision was reasonable in accordance with *Chevron*" (emphasis added)).

Thus, the Board was well aware that with section 602(a) of the 1990 Act Congress only changed the numerical designation of some deportation grounds, while with others, such as that governing firearms violations, it "completely substituted" the text of the new section for that of the former section. And, in the latter cases, the Board concluded that any limitation on the applicability of the former section would no longer have any force, leaving only the effective date provision of section 602(d) to govern the applicability of the new section. *Matter of Chow, supra*.

By contrast, the Board did not make such a suggestion either in *Matter of A-A-, supra,* which preceded *Matter of Chow*, or in *Matter of Gomez-Giraldo, supra,* which followed *Chow*. Indeed, in *Matter of A-A-*, we invoked, as a contrast to such a reading, the express language of the aggravated felony ground of deportability first introduced by the ADAA (which the majority denies we have addressed other than for "illustrative purposes"). Although the Board did not need to reach the issue of deportability in that case because the respondent's Order To Show Cause had been issued before the change in the law, we specifically relied on the provision pertaining to deportability as a point of comparison, stating,

> For example, as enacted by section 7344(a) of the Anti-Drug Abuse Act of 1988, 102 Stat. at 4470-71, section 241(a)(4)(B) of the Act, 8 U.S.C. § 1251(a)(4)(B) (1988), renders deportable any alien "convicted of an aggravated felony at any time after entry." *Congress explicitly stated that this deportation ground would only be prospectively applied to an alien "convicted, on or after the date of the enactment of [the 1988] Act, of an aggravated felony." Section 7344(b) of the Anti-Drug Abuse Act of 1988, 102 Stat. at 4471.*

*Matter of A-A-, supra*, at 497 (emphasis added) (footnote omitted). Moreover, in 1994, in *Matter of Gomez-Giraldo, supra*, we looked to the 1990 Act to defend the rationale for our decision in *Matter of A-A-, supra*, stating that Congress, which is "presumed to be cognizant of existing law pertinent to the legislation it enacts, *see, e.g., Cannon v. University of Chicago*, 441 U.S. 677 (1979); *Lorillard v. Pons,* 434 U.S. 575, 581 (1978); *Blitz v. Donovan*, 740 F.2d 1241 (D.C. Cir. 1984), . . . *did not disturb our construction of the statutory provisions at issue in Matter of A-A- and revisited here." Matter of Gomez-Giraldo, supra*, at 961 n.3 (emphasis added) (citing *Matter of A-A-, supra,* at 499).

In *Matter of Chow, supra*, we made very, very clear that the basis for our ruling was the fact that the substance of the separate provision relating

to firearms and destructive devices was new. Furthermore, the fact that section 602(d) sets forth an effective date for the changes made by the 1990 Act need not mean it obviates aspects of temporal *applicability* associated with pre-existing provisions that were merely redesignated in the course of the recodification. See *Matter of Papazyan*, 20 I&N Dec. 568, 570 (BIA 1992), in which the Board addressed little more than whether the Service could sustain its burden of proof in terms of charging a deportation ground under its present designation when based on the grounds of inadmissibility as previously codified in the Act. Therefore, section 602(d) may be afforded meaning simply as to when charges under the relevant sections of section 241(a) as redesignated are proper, and need not supplant or substitute for a previously enacted and substantively undisturbed applicability provision such as exists under section 7344(b) of the ADAA, 102 Stat. at 4471.

To dismiss our reliance on the terms of section 7344 of the ADAA as being no more than merely for an "illustrative purpose" strains credulity. Of course these extensive comparisons served an illustrative purpose, but why would the Board repeatedly invoke a supposedly superseded provision of the ADAA purely for purposes of illustration? And even if we had used past history that had been superseded to illustrate a point, why would we have been so inexact as not to distinguish it squarely as only an aspect of our illustration?

We spent over five pages discussing these ADAA provisions in depth, and specifically relied on section 7344 of the ADAA as a counterpoint for our interpretation of the 1990 Act provision pertaining to restrictions on waiver eligibility. *Matter of A-A-, supra. We meaningfully distinguished our conclusion in Matter of Chow on th*e basis that it "completely superseded" the former deportability ground pertaining to firearms, because it was "completely substituted" in the 1990 Act, never indicating that we believed the aggravated felony deportation ground to have been given the same effect. *See also Matter of Lopez-Amaro*, 20 I&N Dec. 668 (BIA 1993) (holding that a respondent convicted of first degree murder with a pistol was deportable for a firearms violation under section 241(a)(2)(C) on the basis of our decision in *Matter of Chow, supra), aff'd*, 25 F.3d 986 (11th Cir. 1994).

Certainly, we must have taken the provisions of section 602 of the 1990 Act into account generally in interpreting the new firearms and waiver provisions. It is not as though we made only some casual reference to section 7344 of the ADAA in *Matter of A-A-*, as an example, albeit without any force, of "what Congress does when it wants to set a prospective limitation." *Cf. Matter of Lettman,* 22 I&N Dec. 365, at 372 (BIA 1998. The majority fails to explain its disregard for the implicit and explicit reliance on the aggravated felony deportability ground in our analyses in *Matter of A-A-, supra,* or *Matter of Chow, supra,* in asserting that its conclusion today somehow is in conformity with that precedent.

Moreover, a closer look at our 1993 decision in *Matter of Lopez-Amaro, supra*, is revealing in that it involves a respondent convicted *in 1983* of first degree murder with a firearm, who was not charged with being or found deportable on the basis that her murder conviction constituted an aggravated felony. *Id.* at 669. If the majority's view of section 602(c) of the 1990 Act is correct or consistent with the way in which the applicability of the deportation ground for an aggravated felony previously was understood, why would an alien convicted of first degree murder in 1983 not have been charged with being convicted of an aggravated felony, but as having been convicted of a firearms offense, as amended by the 1990 Act?[5]

We recognized specifically that "[d]eportability based on conviction of a crime involving moral turpitude is not at issue in this case because the murder took place more than 5 years after the respondent's [1977] entry into this country." *Matter of Lopez-Amaro, supra*, at 669 n.1.[6] We do not intimate even the possibility that the respondent could have been deportable based on an aggravated felony conviction. While, admittedly, the particular grounds of deportability charged are within the prosecutorial discretion of the Service, the Service's failure to include such a charge and the Board's failure to even consider it an issue indicate to me that, as I suggested at the outset, a 1983 conviction was presumed not to constitute a basis for deportation because it occurred prior to November 18, 1988.

Furthermore, the Service's interpretation of former section 242(a)(2)(B) of the Act, 8 U.S.C. § 1252(a)(2)(B) (1994), addressing eligibility for release from custody, which had been prohibited altogether in cases in which the respondent had been convicted of an aggravated felony, is pertinent. *See* ADAA §§ 7343(a), (c), *revised by* 1990 Act § 504(a), 104 Stat. at 5049-50 (enacted Nov. 29, 1990), *corrected by* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 306, 105 Stat. 1733, 1751 ("MTINA"); *see also* 8 C.F.R § 242.2(c) (1997). In interpreting the revision of that section that allowed the release of certain respondents from custody, the Service concluded that the aggravated felony convictions in question were those occurring *after* November 18, 1988. *See* Op. Off. General Counsel 91-3, *supra* (concluding that section 7343 of the ADAA applies "only to those aliens 'convicted' of an aggravated felony on or after November 18, 1988 [and] . . . triggers the mandatory detention [provision]"); *see also Matter of Ellis*, 20 I&N Dec.

---

[5]I note that the Order To Show Cause in this case was issued on July 31, 1991, after the March 1, 1991, date on which the revisions and redesignations made in section 602(a) of the 1990 Act had taken effect according to section 602(d).

[6]The respondent in *Matter of Lopez-Amaro, supra*, was originally paroled into the country in 1972, but completed her "entry" when her status was adjusted in 1977. *See also Matter of Jimenez-Lopez,* 20 I&N Dec. 738 (1993).

641, 643 (BIA 1993) (holding that under the 1990 Act, the Attorney General could release an alien convicted of an aggravated felony, providing he demonstrates that he has been lawfully admitted to the United States, does not present a threat to the community, and is likely to appear for any scheduled hearing).

The Service's interpretation supports the view that a prospective application of the aggravated felony ground of deportability (following enactment of the ADAA on November 18, 1988) has been, and remains, the rule. Our decisions reflect that we have read the provisions involving the aggravated felony ground of deportation and those governing release from custody together. *See Matter of Melo, supra*, at 885 (distinguishing between a 1987 and a 1989 conviction, each of which was for drug trafficking in concluding that it was the respondent's 1989 conviction that "brought him within the ambit of former section 242(a)(2)," which required individuals convicted of an aggravated felony after November 18, 1988, to rebut a presumption of dangerousness for bond purposes). It would be unusual, if not irreconcilable, to conclude that, under the 1990 Act, an individual convicted of an aggravated felony before November 18, 1988 was to be treated as deportable on the basis of having an aggravated felony conviction, but that the aggravated felony custody provisions would not apply to him or her.

## III. SECTION 602 AND THE AGGRAVATED FELONY GROUND OF DEPORTABILITY AS INTERPRETED BY THE FEDERAL COURTS

Section 241(a)(2)(A)(iii) of the Act and the subsections specifying grounds of deportation for controlled substance and firearms convictions are independent of one another. It is as though aggravated felonies are apples; firearms convictions are oranges. While they may join each other in one big fruit basket, they are distinct. Nonetheless, both the majority and the concurring and dissenting Board members latch onto the decisions of the Federal circuit courts involving the substantive change in the firearms ground of deportability as though they are dispositive of the issue before us. I disagree.

### A. The Eleventh Circuit Opinion in *Lopez Amaro v. INS* Does Not Control

I note that the United States Court of Appeals for the Eleventh Circuit, the circuit in which this case arises, has tailored its own decisions to follow Board law. *See Jaramillo v. INS*, 1 F.3d 1149, 1155 (11th Cir. 1993) (en banc). The operative word here is "follow." The Eleventh Circuit has expressed repeatedly its desire to follow a consistent agency policy, most recently citing to *Jaramillo* in *Yeung v. INS*, 76 F.3d 337, 341 (11th Cir.

1995), where the court held:

> We recognize, however, that the issues raised here are of national importance in "an area of the law where uniformity is particularly important." *Jaramillo v. INS,* 1 F.3d 1149, 1155 (11th Cir.1993) (en banc). We will therefore afford the Attorney General, in whom Congress has vested the authority to rule on legal questions arising from the immigration law, the opportunity to reconsider and construe § 212(h) consistent with the competing statutory, constitutional, and policy interests at stake.

In other words, in neither *Yeung* nor *Jaramillo* did the circuit court reach a particular legal conclusion on its own, but arrived at the result it reached by following the Board's own reasoning. *Lopez-Amaro v. INS*, 25 F.3d 986 (11th Cir. 1994), *cert. denied*, 513 U.S. 1146 (1995), is a circuit court decision addressing a weapons conviction that relies on Board precedent in *Matter of Chow*, *supra*. In *Jaramillo v. INS, supra*, the court stated clearly:

> In such a case, "the question for the court is whether the agency's answer is based on a *permissible* construction of the statute." We must defer to the Board, . . . *so long as the Board's interpretation "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute* . . . unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*Id.* at 1153-54 (second emphasis added) (citations omitted) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra*, at 843, 845).

In *Lopez-Amaro*, the Eleventh Circuit addressed the completely rewritten ground of deportability based on a firearms conviction as it had been addressed by the Board in *Matter of Chow, supra*, separate and apart from any interpretation of the aggravated felony ground of deportability. As I have indicated above, the respondent in *Lopez-Amaro* was *not* charged with deportability on the aggravated felony ground based on a 1983 first degree murder conviction, although there was no impediment to her being so charged had a pre-November 18, 1988, conviction been viewed as supporting a charge of deportability. Thus, although the majority speaks in terms of the circuit "addressing" the issues raised—and my two dissenting colleagues apparently acquiesce to this position—clearly the circuit has not done so squarely. In fact, the majority admits that neither the Eleventh Circuit nor any other circuit has spoken directly to the effect of section 602 or anything else in the 1990 Act in relation to when a conviction prior to November 18, 1988, that may be classified as an aggravated felony renders an alien deportable under section 241(a)(2)(A)(iii) of the Act.

For their part, my concurring and dissenting colleagues state only that they do not "find a meaningful basis for distinguishing the issue presented

in *Lopez-Amaro* in regard to firearms convictions." My reply to these reservations is: What about our decision in *Matter of Chow, supra*, and the fact that we expressly reached the holding there because the substance of the firearms provision was completely revamped? What about the fact that we subsequently reaffirmed our analysis in *Matter of A-A-, supra*, without even the suggestion of modification or clarification in *Matter of Gomez-Giraldo, supra*? We did not address the aggravated felony deportation ground, and the Eleventh Circuit did not follow any reasoned interpretation on our part in that regard in *Lopez-Amaro*. Instead, as discussed above, prior to the instant opinion, we have made plain—in decisions expressly analyzing the effect of the 1990 Act on the aggravated felony ground of deportation—that we did not consider a conviction prior to that date to render an alien deportable.

## B. Federal Court Acceptance of Our Reading

No Federal court decision appears to have squarely addressed a challenge to a finding of deportability, per se, based on an aggravated felony conviction entered prior to November 18, 1988, in which a notice was provided prior to March 1, 1991; however, at least one case has addressed a pre-November 18, 1988, conviction, and several have addressed the Board's interpretation as though conviction of an aggravated felony as a ground of deportability provides a point of comparison for interpretation of other statutory sections amended by the 1990 Act.

In *Scheidemann v. INS*, 83 F.3d 1517 (3d Cir. 1996), a respondent, who was convicted in 1987 of various Federal racketeering and controlled substance distribution offenses, was charged in March 1992 with deportability under section 241(a)(2)(B)(i) of the Act, as an alien convicted of a controlled substance violation. *Id.* at 1518. Deciding this appeal in 1996, the United States Court of Appeals for the Third Circuit found the respondent ineligible for a waiver of deportability under section 212(c), as amended by the provisions of the 1990 Act, by relying on the 1988 provisions of the ADAA, including the aggravated felony ground of deportability, reasoning as follows:

> The other three substantive provisions of the ADAA employing the "aggravated felony" term, each of which concerns deportation of aggravated felons, *explicitly limit their application prospectively to aliens convicted of aggravated felonies "on or after the date of the enactment" of the ADAA. See* §§ 7343(c) ("Deportation of Aliens Committing Aggravated Felonies"), 7344(b) ("Grounds of Deportation"), and 7347(c) ("Expedited Deportation Proceedings for Aliens Convicted of Aggravated Felonies"). . . . [T]hese provisions demonstrate that Congress knew well how to limit expressly the reach of a provision where it desired to do so, but Congress did not do so with respect to the definition section.

*Id.* at 1524 (emphasis added) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421,

432 (1987), noting that, where Congress includes particular language in one section of a statute but omits it from another section of the same act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion). No suggestion was made that the petitioner's deportation was inevitable because he was deportable as a result of a conviction for an aggravated felony.

Similarly, in a 1993 decision, *De Osorio v. United States INS*, 10 F.3d 1034, 1039 (4th Cir. 1993), the United States Court of Appeals for the Fourth Circuit adopted the view of the Board in *Matter of A-A-, supra*, concluding that "[t]he Board contends that because other sections of the ADAA and the IMMACT have explicitly prospective language (i.e. they are applicable only to aggravated felony convictions on or after the date of enactment), then sections without any temporal limits, such as § 212(c), must include all aggravated felonies." The court so held based on its understanding that

> [t]he Board asserted in *Matter of A-A-* that when Congress intended a restriction in the ADAA to apply to convictions only after the date of enactment, it expressly so stated. Int. Dec. 3176 at 8-10. *For example, § 7344(a) made aliens convicted of an aggravated felony deportable, but this provision was only to be prospectively applied to convictions after the date of the ADAA's enactment.* 102 Stat. at 4470-71, (codified at §241(a)(4)(B) of the INA, 8 U.S.C.A. § 1251(a)(4)(B) (West Supp.1993)),

*Id.* at 1039 n.4 (emphasis added).

In another case involving criminal reentry after deportation by one convicted of an aggravated felony, *United States v. Baca-Valenzuela,* 118 F.3d 1223 (8th Cir. 1997), the United States Court of Appeals for the Eighth Circuit acknowledged that at the time the petitioner was convicted of a state drug charge in 1987, his conviction was not an aggravated felony, but a felony which then was a deportable offense under section 241(a)(4), and reentry into the United States after deportation carried a maximum penalty of 2 years in prison. 8 U.S.C. § 1326 (1987). The court recognized, however, that while Baca-Valenzuela was imprisoned, Congress passed statutes in 1988 and 1990 amending the relevant provisions on illegal reentry after deportation in several of the other substantive sections of the 1988 Act, which used the term "aggravated felony," but explicitly limited the statute's application to aliens convicted of aggravated felonies "on or after the date of the enactment." The court reasoned that such an express limitation would have been unnecessary and redundant if the definition of "aggravated felony" did not already include convictions prior to the effective date of the Act. See *id.* at 1229 n.12, (where the court emphasized that

> [i]n two other sections of the 1988 Act a substantive provision regarding the deportation of aliens who commit an aggravated felony is explicitly limited to prospective crimes only. *See* §§ 7344(b) ("Grounds of Deportation") & 7347(c) ("Expedited Deportation Proceedings for Aliens Convicted of Aggravated Felonies")).

These Federal court decisions rendered in 1996, 1993, and 1997,

respectively, relied on the November 18, 1988, effective date applicable to the aggravated felony ground of deportation. They did not invoke the pre-1990 Act provision for "illustrative purposes," but because they viewed it as being in effect, just as we, at the Board, relied on the November 18, 1988, effective date in our 1992, 1993, and 1994 decisions.

## IV. CONCLUSION

The majority, nevertheless, ignores our previous reliance on the aggravated felony deportation ground as a point of comparison to understand the provisions of the 1990 Act. Although no legislative history exists that directly addresses the scope of the aggravated felony deportation ground, and although no Federal court supports the position we now adopt as precedent, the majority puts it forth as a reasoned analysis.

While the nature of the ultimate question—did a simple housekeeping recodification that left intact all substantive aspects of a prior subsection stating that deportability is incurred when an alien is convicted of an aggravated felony after November 18, 1988, change that subsection—may seem rather straightforward, the answer is not plain and requires reexamination of ambiguous statutory provisions. I question the value of such a debate when the particular question already has been decided and followed consistently by the Board in aggravated felony cases, the statutory sections have been completely overwritten both in form and substance, the provision would affect convictions over 10 years old, and the answer now gleaned from revisiting prior law applies only to whatever remaining deportation proceedings that were initiated sometime before April 1, 1997, are still pending, going on 2 years later.

However, because I cannot conclude that the majority opinion reversing our established interpretation constitutes a reasoned decision, and because extremely severe deportation consequences attach to the interpretation they impose, I cannot join it. Indeed, even if I agreed with the majority's analysis, I could not join it, as I believe that if we are going to reverse consistently applied Board law, we should declare that we are doing so, provide our reasons for doing so, and, as we have done in the past, make specific, intentional modifications to existing precedent decisions. I also do not find that the result reached by the majority is preordained in the Eleventh Circuit, in which jurisdiction this case arises. Consequently, I dissent.