[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 31 2000
THOMAS K. KAHN
CLERK

------------------------

Nos. 97-5283, 98-5767

------------------------

Agency No. A17-599-144

ROBERT A. LETTMAN,

Petitioner,

versus

JANET RENO, Attorney General, IMMIGRATION AND
NATURALIZATION SERVICE,

Respondents.

----------------------
Petitions for Review of Orders of the
Board of Immigration Appeals
----------------------
**(March 31, 2000)**

Before BLACK and HULL, Circuit Judges, and GOODWIN[*], Senior Circuit
Judge.

GOODWIN, Senior Circuit Judge:

---

[*]    Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

Robert A. Lettman petitions for review of a Board of Immigration Appeals ("BIA") en banc decision, dated November 5, 1998, finding him deportable under section 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for conviction of an aggravated felony for third degree murder. We affirm the BIA's en banc decision because we hold that INA section 241(a)(2)(A)(iii) authorizes the deportation of aliens convicted of aggravated felonies at any time after entry.[1]

## BACKGROUND

The INS has ordered Lettman deported to Jamaica as a consequence of his 1987 conviction for third degree murder in the death of his child. His status has brought him twice before this court, as both this court and the BIA have grappled with the questions of whether, and how, statutory changes made after his conviction affected his deportability. See, e.g., Lettman v. Reno, 168 F.3d 463 (11th Cir. 1999) ("Lettman I"), reh'g granted, opinion vacated in part by Lettman v. Reno, 185 F.3d 1216 (11th Cir. 1999).

---

[1] This Court ordered that Lettman's two appeals be consolidated. In Appeal No. 97-5283, Lettman initially filed a petition for review of the BIA's order, dated July 7, 1997; however, the BIA subsequently vacated that order. The BIA's en banc decision now constitutes the only final order against Lettman. Thus, we dismiss Lettman's petition for review in Appeal No. 97-5283 and address in this opinion only Lettman's second petition for review which was filed in Appeal No. 98-5767.

The INS commenced deportation proceedings against Lettman on July 30, 1996. Lettman opposed his deportation on the ground that his conviction occurred before the effective date of the Anti-Drug Abuse Act of 1988 ("ADAA"), which first defined his crime as an aggravated felony and ground for deportation. The IJ and the BIA both concluded that the Immigration Act of 1990 ("IMMACT") eliminated the ADAA's date restriction and thus made Lettman deportable.

## JURISDICTION & STANDARD OF REVIEW

We review de novo the BIA's statutory interpretation of the INA, but we will defer to the BIA's interpretation if it is reasonable. See Le v. United States Attorney General, 196 F.3d 1352,1353-54 (11th Cir. 1999). In Lettman I, 168 F.3d at 464-65, we resolved the question of jurisdiction, and that portion of the opinion still controls. Thus, we have jurisdiction to determine whether or not the BIA correctly held that Lettman is a deportable alien. Id. However, if Lettman is a deportable alien both in fact and under applicable law, then our jurisdiction ends and we must dismiss the appeal. See id.

## DISCUSSION

The deportation ground entitled "Aggravated felony" now provides that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable." INA § 241(a)(2)(A)(iii). The parties agree that Lettman's third degree murder conviction constitutes an aggravated felony.

3

The legal issue is the applicability of the ADAA date restriction. As originally enacted, the aggravated felony ground for deportation did not apply to aliens convicted prior to November 19, 1988 – the date of the enactment of the ADAA. The Government argues, and the BIA held, that IMMACT supersedes the effective date restriction set forth in the ADAA in 1988. See Matter of Lettman, Int. Dec. 3370 (BIA 1998). We must uphold the agency interpretation of a statute that the agency is charged by Congress to enforce so long as that interpretation is reasonable. See Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984). The Supreme Court recently applied Chevron to the immigration context and emphasized that if the statute is ambiguous, we must defer to the BIA's interpretation of the statute so long as it is permissible. See INS v. Aguirre-Aguirre, 526 U.S. 415, 119 S.Ct. 1439, 1445 (1999).

After reviewing the statutory provisions and the relevant case law, we hold that the BIA's interpretation is reasonable. The only other circuit to address the question in a published opinion has held, as we do today, that IMMACT supersedes the ADAA date restriction with regard to aggravated felonies. See Lewis v. United States INS, 194 F.3d 539 (4th Cir. 1999). Moreover, this circuit has already held that IMMACT supersedes the ADAA date restriction with regard to firearms convictions. See Lopez-Amaro v. INS, 25 F.3d 986 (11th Cir. 1994).

4

We start with the aggravated felony ground of deportation itself. As mentioned above, INA § 241(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable." In making wholesale revisions to the INA, IMMACT redesignated the aggravated felony ground, but did not expressly enact or reenact any corresponding date restriction. The aggravated felony ground is subject to a date restriction only if we read IMMACT as preserving, or reenacting, the ADAA date restriction by implication.

Examining IMMACT § 602(c), entitled the "Savings Provision," we agree with the BIA and the <u>Lewis</u> and <u>Lopez-Amaro</u> decisions that the IMMACT did not impliedly reenact or preserve the ADAA date restriction. The relevant portion of section 602(c) reads as follows:

> <u>Except as otherwise specifically provided in such section</u> and subsection (d), the provisions of <u>such section</u>, <u>as amended by this section</u>, shall apply to all aliens described in subsection (a) thereof <u>notwithstanding</u> that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, <u>occurred before the date of the enactment of this Act</u>.

IMMACT § 602(c) (emphases added).

Our decision here thus turns on whether, as the BIA held, the aggravated felony deportation ground applies "notwithstanding . . . that the facts . . . occurred before the date of this Act." IMMACT § 602(c) (the "Notwithstanding Clause"). The question depends largely on the application of "such section" in section

602(c).  If "such section" refers to the aggravated felony ground with the date restriction <u>intact</u>, as enacted by the ADAA in 1988 (prior to IMMACT), then the language stating "[e]xcept as otherwise specifically provided in <u>such</u> <u>section</u>" (the "Exception Clause") would remove the aggravated felony ground from the ambit of the Notwithstanding Clause.  On the other hand, as the Government argues, if "such section" refers to the aggravated felony ground <u>without</u> the date restriction, as enacted by IMMACT (which did not expressly reenact the date restriction), then the Notwithstanding Clause survives to effect deportability, unaffected by the Exception Clause.

The Supreme Court has held that an alien may be deported for a crime committed prior to enactment of the relevant deportation ground where the statute stated that the alien was deportable if convicted "at any time" "notwithstanding . . . that the facts . . . occurred prior to the date of enactment of this Act."  <u>Mulcahey v. Catalanotte</u>, 353 U.S. 692, 694 (1957) (deporting a man for a 1925 narcotics conviction pursuant to §§ 241(a)(11) and (d) of INA 1952).  Of course,  <u>Mulcahey</u> does not address the ADAA date restriction (section 7344(b)) or the IMMACT Savings Provision (section 602(c)), but <u>Mulcahey</u> is authority for the general proposition that Congress may require aliens to be deported for offenses committed prior to the time Congress acts.  Moreover, if the Notwithstanding Clause survives

6

the Exception Clause, then the statutory language yielding retroactivity in Mulcahey is very similar to the language we address here.

The BIA reasonably interpreted "such section" to refer to the aggravated felony ground without the ADAA date restriction. In light of Congress's aim to "make the [INA] more rational and easier to understand," H.R. Conf. Rep. No. 101-955, at 119, 128 (1990), reprinted in 1990 U.S.C.C.A.N. 6784, 6793, the BIA permissibly held that IMMACT created a scheme that would avoid constant cross-referencing to the historical version of the statute. Likewise, in light of Congress's stated aim to "provide[] for a comprehensive revision of all the existing grounds for exclusion and deportation," id., the BIA permissibly held that Congress did not intend to "keep the former version perpetually intact." Matter of Lettman, Int. Dec. 3370.

As noted above, our circuit's Lopez-Amaro addressed the effect of IMMACT § 602(c) upon ADAA § 7348(b), applying the former firearms ground for deportation. Section 7348(b) read in almost identical fashion to the former aggravated felony date restriction of section 7344(b), applying deportation only to convictions occurring "on or after the date of the enactment of this Act [November 18, 1988]."

In Lopez-Amaro, this circuit relied on the language of the Notwithstanding Clause of IMMACT § 602(c) and reasoned that "Congress explicitly intended this

7

section to apply to aliens 'notwithstanding that . . . the facts, by reason of which the alien [is deportable], occurred before the date of enactment of this Act.'" Lopez-Amaro 25 F.3d at 988 (quoting the Notwithstanding Clause). Under that interpretation, this circuit in Lopez-Amaro held that "the effective date restrictions found in the old statute no longer apply." Id.; see also Hamama v. INS, 78 F.3d 233 (6th Cir. 1996) (IMMACT permissibly supersedes ADAA date restriction with respect to firearms convictions); United States v. Yacoubian, 24 F.3d 1 (9th Cir. 1994) (same); Chow v. INS, 12 F.3d 34 (5th Cir. 1993) (same).

Lettman argues that the firearm deportation ground has retroactive effect (under Lopez-Amaro), whereas the aggravated felony ground does not. Lettman supports this disparate treatment by asserting that Congress made "substantive" changes to the firearm offense ground, but "merely redesignated" the aggravated felony ground.

We find nothing to compel the BIA to conclude that Congress intended those convicted of firearm offenses to be treated differently than those convicted of aggravated felonies. On the contrary, giving the grounds parallel treatment is consistent with Congress's intent to "make the [INA] more rational and easier to understand." H.R. Conf. Rep. No. 101-955, at 119, 128.

We also find nothing in IMMACT to compel the BIA to conclude that Congress meant to preserve and "merely redesignate" the old version of the

8

aggravated felony ground. Congress did not evince intent to make piecemeal changes, but rather intended to "provide[] for a comprehensive revision of <u>all</u> the existing grounds for exclusion and deportation." <u>Id.</u> (emphasis added). The BIA reasonably included the aggravated felony ground among those "comprehensive revisions." Accordingly, we hold that, as with firearms offenses under <u>Lopez-Amaro</u>, the BIA reasonably concluded that an alien is deportable if convicted of an aggravated felony at any time after entry.

**CONCLUSION**

In Appeal No. 98-5767, we agree with the BIA that Lettman is deportable as an alien convicted of an aggravated felony and affirm the BIA's en banc decision, dated November 5, 1998. Having determined that the BIA correctly held that Lettman is a deportable alien, we now dismiss Appeal No. 98-5767 because we lack jurisdiction to inquire further into Lettman's petition for review because of Section 309(c)(4)(G) of the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, § 309(c)(4)(G), 110 Stat. 3009, 3626-27. <u>See Lettman I</u>, 168 F.3d at 464. We also deny Lettman's separate "motion to summarily reverse" the BIA's en banc decision.

In Appeal No. 97-5283, we dismiss as moot Lettman's initial petition seeking review of the BIA's order dated July 7, 1997, because that order was subsequently vacated.

9

Lettman's motions for attorney fees in both appeals are denied.

**AFFIRMED IN PART and DISMISSED IN PART.**