BYBEE, Circuit Judge,
dissenting:
There is no polite way to say this: The statutory scheme we are required to parse in this case is a mess. It is a model of ambiguity and misdirection. That fact, of course, does not give us license to impose our own reading on the statute, but means that we must accept an agency’s construction of the statute so long as it is reasonable. Chevron, USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The majority declines to accept the BIA’s reading and imposes its own interpretation based on what it calls “the plain language of the statutes.” Maj. Op. at 1068. Whether the majority has improved on the BIA’s analysis is debatable — although for the reasons I explain, I quite doubt it — but we do not have to be confident of our analysis, we only have to be confident that the BIA’s is reasonable. And of that, I am 100 percent confident. Indeed, so twisted and complex are the provisions at issue here that — short of spitting in a bucket— the BIA could have concluded almost anything in this case and been reasonable. There is nothing “plain” about these stat *1081 utes. If Chevron means anything, this is a classic case for deferring to the agency.
In September 1988, an Oregon state court convicted Ramon Ledezma-Galicia of sodomy for sexually molesting a minor. The crime for which he was convicted constitutes “sexual abuse of a minor,” which is an aggravated felony under current law, see 8 U.S.C. § 1101(a)(43)(A), and therefore a basis for removal under 8 U.S.C. § 1227(a)(2)(A)(iii). The BIA, consistent with its en banc decision in In re Lettman, 22 I. & N. Dec. 365 (BIA 1998), held that he is removable. In Lettman, the BIA found that the relevant statutory provisions were “difficult to decipher,” “ambiguous,” and “capable of different readings,” but reasoned that the 1990 amendments to the INA “dictate[ ] that any alien who has been convicted of a crime defined as an aggravated felony, and who was placed in deportation proceedings on or after March 1, 1991, is deportable regardless of when the conviction occurred.” Id. at 372, 378.
The majority disagrees. Arguing that “the presumptions against retroactivity and against implied repeals remove any potential ambiguity,” the majority finds that “Chevron deference has no role to play.” Maj. Op. at 1075 (citing INS v. St. Cyr, 533 U.S. 289, 320 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). As a result, the majority concludes, “we must decide it ourselves.” Id. at 1067. Applying de novo review, it then holds that Ledezma cannot be removed because the law making aliens convicted of aggravated felonies deportable does not apply to aliens convicted of aggravated felonies prior to November 18, 1988. Id. at 1062. The majority admits that this creates “a ‘small puncture in a broad shield’ ” because aliens are deportable for any number of offenses committed prior to 1988. Id. at 1071 (citation omitted). According to the majority’s decision, Congress intended to create this “minor exception[ ],” id., and as a result, aliens who sexually abuse minors will not be subject to deportation so long as they committed the crime before 1988.
In the process of discarding the BIA’s considered decision, the majority not only takes issue with the agency, but it also creates a clear split with the Fourth and Eleventh Circuits, which recognized that the statutes are ambiguous and have held that the BIA’s construction of the INA in Lettman is reasonable. Lettman v. Reno, 207 F.3d 1368 (11th Cir.2000) (opinion per Goodwin, J.); Lewis v. INS, 194 F.3d 539 (4th Cir.1999). Furthermore, the majority’s decision flies in the teeth of our en banc decision in United States v. Hovsepian, 359 F.3d 1144 (9th Cir.2004). In Hovsepian we approved the same reasoning the BIA employed in this case as applied to a parallel section of the same act. Indeed, were the issue to come before the BIA again, Hovsepian would likely compel the conclusion the BIA reached in Lettman.
I respectfully dissent.
I
My objections to the majority’s analysis begin with the familiar Chevron two-step. 467 U.S. at 842-43, 104 S.Ct. 2778. First, the reviewing court must determine whether the statute is ambiguous: “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. If, however, the statute is silent or ambiguous then the reviewing court “does not impose its own construction of the statute, but rather it decides ‘whether the agency’s answer is based on a permissible construction of the statute.’ ” Gonzales v. Dep’t of Homeland Sec., 508 F.3d 1227, 1235 (9th Cir.2007) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). The agency’s interpretation is entitled to deference “unless *1082 that interpretation is contrary to the plain and sensible meaning of the statute.” Simeonov v. Ashcroft, 371 F.3d 532, 535 (9th Cir.2004). If a court concludes that an agency’s decision “was based, at least in part, on ambiguity in the applicable statutes” then the court “must give deference to the agency’s resolution of these ambiguities.” Gonzales, 508 F.3d at 1235.
The majority discards Chevron from the outset because “a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, [and] there is, for Chevron purposes, no ambiguity in such a statute to resolve.” St. Cyr, 533 U.S. at 320-21 n. 45, 121 S.Ct. 2271 (citing Landgraf v. USI Film Products, 511 U.S. 244, 264, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)); see Maj. Op. at 1066-67, 1075-76. The majority’s reliance on the presumption against retroactivity is misplaced here, for two reasons. First, as I will discuss in the greater detail in the next sections, the BIA was quite clear in Lettman that it was not merely construing a retroactivity provision; its judgment did not rest on its interpretation of an isolated provision, but rather it took “guidance from the statute as a whole.” Lettman, 22 I. & N. Dec. at 370. Specifically, the BIA found that the 1990 IMMAct “completely revised the deportation grounds” in the INA; indeed, the IMMAct was “intended to replace [the] former section ... in its entirety.” Id. at 371. As the BIA found,
Our reading comports with our understanding that the purpose of [§ 602 of the IMMAct] was to completely revise the deportation grounds. With this in mind, we find it difficult to believe that Congress intended to revise the deportation grounds, but still have the former Act ultimately determine deportability. In other words, it makes no sense to enact a whole new provision, yet keep the former version perpetually intact.
Id. at 372. BIA’s view of the effect of the IMMAct on the comprehensive immigration scheme in the INA is plainly worthy of deference.
Second, the Court’s retroactivity concerns in St. Cyr do not apply here. In St. Cyr, the Court invoked the Landgraf presumption against retroactivity because the government’s argument for retroactive repeal of § 212 rights rested on structural arguments about IIRIRA, an effective date for IIRIRA, and a savings provision, none of which actually said anything specific about retroactivity. See St. Cyr, 533 U.S. at 317-18, 121 S.Ct. 2271. By contrast, the Court pointed to a number of provisions in IIRIRA that “indicate[d] unambiguously its intention to apply specific provisions retroactively.” Id. at 318-19 & n. 43, 121 S.Ct. 2271. Exhibit 1 for the Court was IIRIRA § 321(b), which amended the definition of “aggravated felony” and “clearly states that it applies with respect to ‘conviction[s] ... entered before, on, or after the statute’s enactment date.” Id. at 319, 121 S.Ct. 2271. Remarkably, the provision at issue here, IMMAct § 602(c), employs nearly identical language to IIRIRA § 321(b). Compare IMMAct § 602(c) (“the provisions of such section ... shall apply to all aliens described in subsection (a) notwithstanding that ... the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act ”) (emphasis added) with IIRIRA § 321(b) (“the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph”) (emphasis added). In sum, the provision at issue here, IMMAct § 602(c), is not “a statute that is ambiguous with respect to retroactive application.” St. Cyr, 533 U.S. at 320 n. 45, 121 S.Ct. 2271. Section 602(c) — for reasons I will explain — is ambiguous, but it is not ambiguous about whether Congress in *1083 tended retroactive application. Section 602(c) is, precisely, an “express command” about retroactivity, Landgraf, 511 U.S. at 280, 114 S.Ct. 1483, in which Congress “indieate[d] unambiguously its intention to apply specific provisions retroactively.” St Cyr, 533 U.S. at 318-19, 121 S.Ct. 2271; see Hovsepian, 359 F.3d at 1156-57 (holding that § 602(c) “directed with the requisite clarity that the law be applied retrospectively”). The question of to whom a retroactive provision applies is quite different from whether a statute has retroactive effect. The Court in St Cyr was concerned with the latter; we are dealing with the former.
For these reasons, I would afford Chevron deference to the BIA’s construction of the INA, as amended by these statutes. In any event, I do not think this case ultimately turns on whether we defer to the BIA’s views, because the BIA’s quite reasonable reading of the statutes is also the best reading of those statutes. I now turn to these complicated acts to put in context the BIA’s construction.
II
A
Congress first created the category of crimes denominated “aggravated felonies” in the Anti-Drug Abuse Act of 1988 (“ADAA”), Pub.L. No. 100-690, 102 Stat. 4181. The ADAA added the category of an alien “who is convicted of any aggravated felony at any time after entry” to the pre-existing statutory grounds for deportation, which were enumerated in Section 241(a) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4). See ADAA § 7344(a). The ADAA defined the term “aggravated felony” as “any drug trafficking crime ... any illicit trafficking in any firearms or destructive devices ... or any attempt or conspiracy to commit any such act, committed within the United States.” Id. § 7342. In 1988, the crime for which Ledezma had been convicted — sodomy for sexually molesting a minor — did not fall within this original definition of aggravated felony.
The provision adding aggravated felony as a ground for deportation was immediately followed by an applicability clause:
(b) APPLICABILITY. — The amendments made by subsection (a) shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony.
ADAA § 7344(b). Thus, under the ADAA, the deportation provisions for aggravated felons applied only prospectively to aliens convicted of an aggravated felony on or after November 18, 1988. It follows that as of 1988 Ledezma would not fall under the new deportation provisions both because his crime did not qualify and because he had been convicted prior to this date.
B
In 1990, Congress passed the Immigration Act of 1990 (the “IMMAct”), Pub.L. No. 101-649,104 Stat. 4978, “to change the level, and preference system for admission, of immigrants to the United States, and to provide for administrative naturalization, and for other purposes.” Id. The IMMAct did not merely amend prior law, it overhauled § 241(a) by repromulgating the entire section. Thus, § 602 replaced the grounds for deportation in § 241(a) with a revised list that continued to include conviction for an “aggravated felony.” IMMAct § 602(a); see INA § 241(a)(2)(A)(iii). Section 602(c) described how the revised section would apply:
(c) SAVINGS PROVISION — Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraphs (15), *1084 (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.
The meaning of the first sentence is clear: any alien who could have been deported for certain acts before the passage of the IMMAct can still be deported.
The second sentence is a nightmare. The sentence begins “[e]xcept as otherwise specifically provided in such section and subsection (d).” It is unclear what “such section” means. One possibility (favoring Ledezma) is that “such section” refers to INA § 241(a) as in effect before the enactment of the IMMAct, which might include the “applicability” provision in ADAA § 7344(b). Because § 7344(b) “specifically provide[s]” that the “aggravated felony” category does not apply to crimes committed prior to November 18, 1988, under this reading, IMMAct § 602(c) could except Ledezma from deportation on that ground. A second possibility (favoring the government) is that the second reference in § 602(c) to “such section” makes it clear that it is “such section, as amended by this section.” If “such section” refers to § 241(a) of the INA, as amended by the IMMAct, then § 241(a), as amended, is retroactive and an alien (like Ledezma) who committed a qualifying felony before 1988 may be deported. To sum, under the first interpretation, we would read § 602(c) to say:
Except as otherwise specifically provided by former INA § 241(a), INA § 241(a), as amended by IMMACT § 602(a), shall apply to all aliens described in section INA § 241(a) notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the IMMAct.
If the second interpretation prevailed, we would read § 602(c) in this way:
Except as otherwise specifically provided, INA § 241(a), as amended by IMMAct § 602(a), shall apply to all aliens described in section INA § 241(a) notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the IMMAct.
In my view, the latter reading is consistent with the overall theme of § 602, which expands rather than restricts the statute’s applicability. It is also consistent with the idea that IMMAct was a recodification of INA § 241, because it means that § 602(c) is the sole provision we need consult to determine § 602(a)’s applicability. I believe that the second sentence creates a rule, applicable to all of the provisions of INA § 241(a), that (unless the Act specifically directs otherwise) an alien is deportable for the enumerated grounds even if such conduct occurred before the date of the IMMAct was enacted. I admit, however, that the second sentence of § 602(c) is so badly written that no one can opine on its meaning with absolute confidence. In any event, enactment of the IMMAct had no immediate impact on Ledezma’s immigration status, because “sexual abuse of a minor” was not yet defined as an “aggravated felony,” and therefore was not a *1085 ground for deportation under INA § 241(a).
C
In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”), Pub.L. No. 104-208, div. C, title III, 110 Stat. 3009-546, Congress added “sexual abuse of a minor” to the definition of aggravated felony, rendering Ledezma’s sodomy conviction for sexually abusing a minor a deportable offense. See IIRIRA § 321(a)(1), codified at 8 U.S.C. § 1101(a)(43)(A). Furthermore, Congress explicitly provided that this new definition of aggravated felony applied retroactively. IIRIRA § 321(b) provided:
EFFECTIVE DATE OF DEFINITION. — Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following new sentence: “Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.”
Additionally, Congress provided that “[t]he amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred.” IIRIRA § 321(c). When read together, the two provisions required that the modified definition of aggravated felony apply to convictions that occurred before the enactment of IIRIRA, but only if the immigration proceeding were initiated after enactment of the Act.[1]
To summarize, in 1988, Congress made aliens convicted of an aggravated felony deportable. ADAA § 7344(a). The term “aggravated felony” was narrowly defined and did not include sexual abuse of a minor. ADAA § 7342. Congress provided that the aggravated felon provision would not apply retroactively to aliens who were convicted prior to the enactment of the ADAA. ADAA § 7344(b). In 1990, Congress generally revised the grounds for deportation in the INA. IMMAet § 602(a). Congress expanded the definition of aggravated felony, but the definition still did not include sexual abuse of a minor. IMMAet § 501. Simultaneously, Congress provided that the new deportation provisions would apply to aliens even if the facts making them deportable occurred before enactment of the IMMAet, thus overriding the previous applicability provision. Finally, in 1996, Congress amended the definition of aggravated felony to include sexual abuse of a minor, thus making Ledezma an *1086 alien convicted of an aggravated felony. IIRIRA § 321(a)(1). Congress chose to apply the amended definition retroactively to convictions that occurred prior to the enactment of IIRIRA. Id. § 321(b). Read together, these immigration statutes made Ledezma subject to removal.
Ill
A
In a lengthy decision in In re Lettman, the BIA reviewed these acts, the legislative history, prior judicial decisions, and the arguments on both sides. It then held that an alien is subject to deportation regardless of the date of conviction if his crime fits within the definition of aggravated felony. 22 I. & N. Dec. 365, 366 (BIA 1998) (en banc). The BIA concluded that the language of IMMAct § 602(c) “eliminated the date restriction on the aggravated felony ground set forth in the ADAA.” Id.
The BIA began from the premise that IMMAct § 602(a) “completely revised the deportation grounds that were found in section 241(a) of the Act,” by reorganizing, renumbering certain grounds, and substantively revising the grounds for deportation. Id. at 371. “Section 602(a) of the 1990 Act was therefore intended to replace former section 241(a) ... in its entirety.” Id.
The Board then turned to the effect of § 602(a). It “acknowledge^] from the outset that the second sentence of section 602(c) is difficult to decipher, even after considerable examination,” and found “it to be an ambiguous provision, which is capable of different readings.... ” Id. at 372. After considering the arguments of the parties and of amici, the Board concluded that “such section” must refer to INA § 241, as amended by the IMMAct, and that “except as otherwise provided in section 241, as amended in 1990, an alien is deportable for an enumerated ground despite the date of entry or the date of the underlying facts which establish deportability.” Id. The BIA reasoned that, although the matter was not free from doubt, it made “no sense” that Congress would “enact a whole new provision, yet keep the former version perpetually intact.” Id. The rule adopted by the BIA was straightforward: “any alien who has been convicted of a crime defined as an aggravated felony, and who was placed in deportation proceedings on or after March 1, 1991, is deportable regardless of when the conviction occurred.” Id. at 378.
The Eleventh Circuit reviewed the BIA’s decision in Lettman v. Reno, 207 F.3d 1368 (11th Cir.2000), and agreed with its analysis. In an opinion by our own Judge Goodwin, the court held that “INA section 241 (a) (2)(A) (iii) authorizes the deportation of aliens convicted of aggravated felonies at any time after entry.” Id. at 1369. As the court explained the problem:
Our decision ... turns on whether, as the BIA held, the aggravated felony deportation ground applies “notwithstanding ... that the facts ... occurred before the date of this Act.” IMMACT § 602(c). The question depends largely on the application of “such section” in section 602(c). If “such section” refers to the aggravated felony ground with the date restriction intact, as enacted by the ADAA in 1988 (prior to IMMACT), then the language stating “[ejxcept as otherwise specifically provided in such section ” would remove the aggravated felony ground from the ambit of [§ 602(c) ]. On the other hand, as the Government argues, if “such section” refers to the aggravated felony ground without the date restriction, as enacted by IMMACT (which did not expressly reenact the date restriction), then [§ 602(c) ] survives to effect deportability, unaffected by [ADAA § 7344(b) ].
*1087 Id. at 1371 (parentheticals omitted). The court concluded that the “BIA reasonably-interpreted ‘such section’ to refer to the aggravated felony ground without the ADAA date restriction.” Id.
The Fourth Circuit arrived at the same conclusion in Lewis v. INS, 194 F.3d 539 (4th Cir.1999). The court acknowledged the ambiguity of the statute, stating it “cannot conclude that congressional intent is clear and unequivocal here.” Id. at 545. The court concluded that “the Board’s interpretation is certainly reasonable — indeed, we would likely reach the same conclusion.” Id.[2]
B
The majority opinion has not improved on the BIA’s reasoning. Indeed, it falls well short of demonstrating that the BIA’s construction of a badly written set of statutes is not only a permissible one, but the best one.
1
The majority argues that because ADAA § 7344(b) was not included in the text of the INA, the IMMAct could not have affected ADAA § 7344(b). Maj. Op. at 1067-68. I believe the majority to be in error on this point.
There are essentially two problems with the majority’s theory. First, the majority is wrong because ADAA § 7344(b) no longer applies to INA § 241(a). Section 7344(b) only modified the changes imposed by § 7344(a), see ADAA § 7344(b) (“The amendments made by subsection (a) shall apply to ... ”), and § 7344(a) was overwritten by IMMAct § 602(a). Indeed, after § 602(a) rewrote INA § 241(a), and thus made § 7344(a) inoperative, the BIA reasonably concluded — correctly, in my view — -that the retroactivity provision imposed by ADAA § 7344(b) no longer applied. See Lettman, 22 I. & N. Dec. at 372.
Second, if the majority were correct, and ADAA § 7344(b) was not included in any part of the INA, then § 7344(b) still cannot be an exception to the broad retro-activity provision in IMMAct § 602(c). Section 602(c) applies a general rule of retroactivity, “[ejxcept as otherwise specifically provided in such section [of the INA].”[3] If ADAA § 7344(b) was never part of any provision of the INA, then I simply cannot understand how the mandate of ADAA § 7344(b) was “specifically provided in such section.” In other words, once the majority concludes that § 7344(b) is entirely excluded from the INA, it cannot conveniently slip § 7344(b) back into the INA for purposes of applying the “except” clause under IMMAct § 602(c).
In sum, the BIA reasonably concluded ADAA § 7344(b) no longer applies because § 7344(b) only modifies § 7344(a) and the amendments imposed by § 7344(a) were overwritten in 1990. Moreover, taking the *1088 majority’s claim that § 7344(b) was never part of the INA as true, § 7344(b) cannot serve as a “section” of the INA that would bring it within the exception enumerated in IMMAct § 602(c). The BIA committed no error here, and certainly no error that would allow us to ignore Chevron.
2
The majority makes at least two errors in its statutory interpretation analysis. First, even if this case involved an implied repeal — which, as explained below, I believe it does not — the BIA did not err in concluding that IMMAct repealed the retroactivity provision in ADAA § 7344(b) as applied to the changes implemented by ADAA § 7344(a). The presumption against implied repeals is just that: a presumption, not a rule. See United States v. Novak, 476 F.3d 1041, 1052 (9th Cir.2007) (applying the “presumption against implied repeals” and finding that the presumption was rebutted by the language of the statute). The BIA has fully explained why any presumption is overcome: its “understanding [was] that the purpose of section 602 of the 1990 Act was to completely revise the deportation grounds.” Lettman, 22 I. & N. Dec. at 372. The IMMAct, the BIA explained, was a “wholesale revision of [8 U.S.C. § 1251],” a “new statutory scheme,” embracing “comprehensive changes.” Id. at 374. Based on that premise, the BIA’s conclusion makes perfect sense:
With this in mind, we find it difficult to believe that Congress intended to revise the deportation grounds, but still have the former Act ultimately determine deportability. In other words, it makes no sense to enact a whole new provision, yet keep the former version perpetually intact.
Id. at 372.
A 1991 House Committee report supports the BIA’s interpretation, describing the statute in the following terms:
The [IMMAct] substantially revised the immigration law of the United States. In fact, the Act constituted the most comprehensive re-write of immigration law in 66 years. Every major area of the law, with the one exception of refugee matters, was amended.
H. Rep. No. 102-383, at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1372, 1372. Indeed, even today’s majority notes that “Congress overhauled deportation law by passing the IMMAct.” Maj. Op. at 1064. The BIA can hardly be faulted for coming to the same conclusion.
A repeal through a wholesale revision of the section is not the sort of implied repeal that is discouraged by our presumption. A statutory repeal may be properly inferred “where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute.” Nat’l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 663, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (internal quotation marks omitted) (quoting Branch v. Smith, 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003)).[4] The BIA’s construc *1089 tion of § 602 is well within the general principles applicable to implied repeals.
The majority takes consolation in the fact that its decision today places only “a small puncture in a broad shield.” Maj. Op. at 1071 (quotation marks and citation omitted). I disagree. The majority has turned a broad shield into a sieve. According to the majority’s reasoning, any section, whether in the INA or not, can stand as an exception to the retroactivity rule laid out in IMMAet § 602(c). This appears to include retroactivity provisions for all twenty-one categories of crimes included in the definition of “aggravated felony,” see 8 U.S.C. § 1101(a)(43), as well as “the approximately thirty grounds for deportation and fourteen categories of deportable criminal offenses that IMMAet § 602(a) listed.” Maj. Op. at 1071. What was Congress’s point in placing a catch-all retroactivity provision in the statute if every previous retroactivity provision, whether in the INA or not, is still preserved? The majority has not simply created a small exception to a general rule, but ignored the language of the statute and made an otherwise straightforward rule into a mess of competing retroactivity provisions that vary depending on the particular provision at issue.
Second, instead of applying a statutory canon and explaining why it resolves any ambiguity, the majority skips straight to analyzing whether or not Congress impliedly repealed ADAA § 7344(b). Maj. Op. at 1069. In addition to avoiding the problem of stating what the statute actually means, this approach also allows the majority to avoid analyzing whether this case even involves an implied repeal: which, not surprisingly, it does not. IMMAet § 602(a) did not impliedly alter INA § 241(a)it boldly erased it and rewrote it. By redrafting INA § 241(a) in IMMAet § 602(a), Congress severed § 241(a) from § 7344(b) and applied a new provision in IMMAet § 602(c). Indeed, Congress had no need to repeal ADAA § 7344(b) because § 7344(b), by its terms, only applied to amendments made by § 7344(a), not to INA § 241(a) generally or to amendments made by IMMAet § 602(a).
The majority acts as if Congress has simply redesignated the amendments made by ADAA § 7344(a) as a new section of the INA. It did not: Congress chose to “amend” INA § 241(a) by rewriting its provisions. Congress knows the difference between redesignating a section and amending one. Compare IMMAet § 602(a) (“amending” INA § 241(a) and rewriting it completely) with IMMAet § 602(b)(2)(B) (“redesignating” former § 241(e) as § 241(b)). It chose not to redesignate the relevant section here, and we should not act as if it did.
I would defer to the BIA’s reasonable interpretation of these ambiguous statutes.
3
Finally, the majority claims that interpreting § 602(c) to have impliedly repealed ADAA § 7344(b) will produce “exceedingly odd results” when read in conjunction with IMMAet § 501 — a statute that none of the parties has raised in its arguments on appeal, that has no application to the present dispute, and that the BIA has not had an opportunity to interpret. Maj. Op. at 1071-73. I will address the issue briefly to respond to the majority’s claims that § 501 controls the outcome of the present case.
IMMAet § 501(a) included a number of amendments that expanded the definition of “aggravated felony.” IMMAet § 501(b) provided that two of these amendments “shall be effective as if included in the enactment of [ADAA § 7342].” The ma *1090 jority first argues that this reference necessarily indicates an intention to leave § 7344(b) in force; otherwise, the ADAA retroactivity provision would be the same as the IMMAct retroactivity provision. Maj. Op. at 1072-73. This argument is easily dispensed by simply pointing out that the majority’s perceived oddity is actually the current status of the law. See IIRIRA § 321(b) (stating that the definition of aggravated felony “applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph”).[5]
The majority also claims that applying § 501(b) “as having incorporated the temporal limitations of the ADAA with regard only to some of the IMMAct’s definitional amendments would produce exceedingly peculiar results.” Maj. Op. at 1074. The majority proclaims that Congress could not have possibly intended to protect “some, but not all, aggravated felons who committed crimes before the aggravated felony ground of deportation was created.” Maj. Op. at 1074. Why not? Under the majority’s reading of the statute, some changes to the aggravated felony definition in the IMMAct apply to aliens convicted after 1988 while others would only apply to aliens convicted after 1990. The majority fails to recognize that under any construction of these statutory provisions, deportability will turn on a different time period for different aliens depending on their crime of conviction. These kinds of anomalies often result when Congress amends statutes in a piecemeal fashion. The solution is not to enforce our own policy judgment as to how the statute should operate, but to defer to the agency that is charged with interpreting ambiguities in its governing statutes.
Moreover, in attempting to cure the perceived oddities in the BIA’s construction, the majority’s interpretation of the statute produces equally odd results. The majority recognizes (as it must) that an alien convicted of a firearm offense prior to 1988 is deportable, see United States v. Hovsepian, 359 F.3d 1144, 1156-57 (9th Cir.2004) (en banc); Maj. Op. at 1076-77 (recognizing that “[djespite [the ADAA’s] temporal limitation, we have twice held that IMMAct § 602(c) rendered aliens deportable based on their pre-ADAA convictions”), while an alien convicted of sexually molesting a minor at the same time is not. With all due respect, “[t]his division would make no sense,” Maj. Op. at 1074, and this absurdity is only multiplied by the hodgepodge of retroactivity provisions that will apply to IMMAct § 602(a) after the majority’s re-construction of IMMAct § 602(c).
IV
There is a final, compelling reason why the majority is in error. The BIA’s reading of the interaction between the ADAA and the IMMAct explained above is not only consistent with, but is virtually compelled by, our en banc decision in United States v. Hovsepian, 359 F.3d 1144 (9th Cir.2004). In Hovsepian, we held that IMMAct § 602(c) evidenced clear congressional intent to legislate retroactively and that the IMMAct applies to pre-ADAA convictions. See 359 F.3d at 1156. Hovsepian involved a different removability ground — a firearms conviction under 8 U.S.C. § 1227(a)(2)(C), rather than an ag *1091 gravated felony conviction under 8 U.S.C. § 1227(a)(2)(A)(iii) — but this distinction has no bearing on the retroactive application of those grounds for removal, since the applicability provisions of both removability grounds are essentially identical. The applicability provision for the deportation for weapons violation that Hovsepian held did not survive the IMMAct reads:
APPLICABILITY. — The amendment made by subsection (a) shall apply to any alien convicted, on or after the date of the enactment of this Act, of possessing any firearm or destructive device referred to in such subsection.
ADAA § 7348(b). The applicability provision for aggravated felony convictions that the majority argues survives the IMMAct, reads:
APPLICABILITY. — The amendments made by subsection (a) shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony.
ADAA § 7344(b). Thus the interplay between the ADAA and the IMMAct is the same for firearms offenses as it is for aggravated felons.
I cannot see how we can possibly reconcile Hovsepian with the majority’s decision. The majority attempts to distinguish the two provisions on the grounds that IMMAct § 602(a) substantively changed the firearms ground for deportability from the version contained in the ADAA, whereas § 602(a) made no change to the substance of the aggravated felony ground for deportation. Maj. Op. at 1075-76. That change occurred in the INA’s definitional section. IMMAct § 501.
The majority is correct about this structural distinction, but I cannot comprehend why this difference has any bearing on the post-IMMAct survival of the retroactivity provisions of the ADAA. The Eleventh Circuit considered and expressly rejected precisely this attempt to distinguish the applicability provisions for firearms offenses and aggravated felonies. In Leitman, the court explained that it had already addressed the effect of IMMAct § 602(c) on the former firearms ground for deportation, and held that “the effective date restrictions found in the old statute no longer apply.” 207 F.3d at 1372 (quoting Lopez-Amaro v. INS, 25 F.3d 986, 988 (11th Cir.1994), and citing, inter alia, United States v. Yacoubian, 24 F.3d 1 (9th Cir.1994)). The court explained that the petitioner’s attempt to distinguish that case “by asserting that Congress made ‘substantive’ changes to the firearm offense ground, but ‘merely redesignated’ the aggravated felony ground” failed. Id. It “[found] nothing to compel the BIA to conclude that Congress intended those convicted of firearm offenses to be treated differently than those convicted of aggravated felonies.” Id. The court reasoned that “[o]n the contrary, giving the grounds parallel treatment is consistent with Congress’s intent to make the INA more rational and easier to understand.” Id. (citation and brackets omitted).
The Eleventh Circuit’s analysis is consistent with Hovsepian and entirely persuasive. Perhaps this distinction between the statutes might be relevant if the IMMAct amended the definition of aggravated felony in a way that encompassed Ledezma for the first time. But it was not the 1990 IMMAct that defined “aggravated felony” to include sexual abuse of a minor, but the 1996 IIRIRA, and IIRIRA could not have been clearer that its amendments applied “regardless of when the conviction occurred.” IIRIRA § 321(c); see also IIRIRA § 321(b) (making changes to the definition of aggravated felony retroactive). Moreover, the retro-activity of the aggravated felony definition is well established in our precedent. See, e.g., United States v. Maria-Gonzalez, 268 F.3d 664, 668-70 (9th Cir.2001).
*1092 The only question is whether IMMAct makes the general aggravated felony deportability provision retroactive and, in doing so, supersedes the ADAA applicability provision. The BIA looked carefully at that difficult question and concluded that it did. This is a reasonable conclusion worthy of deference.
í¡: ?}5 >{« % íH
I would deny Ledezma’s petition for review. I respectfully dissent.

. IIRIRA § 321(b), reinforced by § 321(c), clearly applies these definitional changes retroactively. This fact alone should, but does not, resolve the present case. Contrary to the government’s position, and subsequent to its briefing in this case, we held that § 321(c) did not retroactively apply the "substantive immigration consequences” resulting from the changed definition of aggravated felony. Lopez-Castellanos v. Gonzales, 437 F.3d 848, 852 (9th Cir.2006). This holding is in direct conflict with the position taken by the First and Second Circuits, which the government relied on in its briefs. See Sousa v. INS, 226 F.3d 28, 33-34 (1st Cir.2000) (”[I]n IIRIRA, Congress made quite clear its intent to apply the enlarged definition retroactively and this explicit provision makes sense only if Congress also intended that this enlarged definition trigger removal, regardless of when the crime occurred.”); Kuhali v. Reno, 266 F.3d 93, 110-11 (2d Cir.2001) (finding that a "1980 conviction is clearly encompassed by the new provisions” because “Congress has made explicit that the new provisions of IIRIRA should apply retroactively”). In LopezCastellanos, we failed to recognize the conflict.
Effectively, IIRIRA § 321(c) provides a second avenue for the conclusion reached by the BIA. See Lettman, 22 I. & N. Dec. at 368 n. 4 (declining to address the impact of IIRIRA § 321(c)). I note this because the result we reach today conflicts not only with the Fourth and Eleventh Circuits, see infra, but, as a result of Lopez-Castellanos, with the First and Second Circuits as well.

. The Second Circuit came to a different conclusion in Bell v. Reno, 218 F.3d 86 (2d Cir.2000). Agreeing that § 602(c) is ambiguous, and finding the alien’s arguments ”abl[e]” and the government’s arguments "convincing!],” it nevertheless concluded that the BIA’s decision in Lettman was "not sustainable because it runs afoul of the longstanding presumption against the retroactive application of ambiguous statutory provisions.” Id. at 92, 93 (citing Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). The Second Circuit nevertheless held that Bell was deportable because § 602(d) was "an independent effective date provision” and thus "ADAA § 7344(b) does not survive this provision.” Id. at 96. We need not consider the Second Circuit’s § 602(d) argument, however, because we rejected the Landgraf argument, en banc, in Hovsepian. See 359 F.3d at 1156-57.

. For purposes of this argument I assume that the majority agrees that "such section” refers to the INA, even though it fails to express exactly what "such section” must unambiguously mean.

. The majority's reliance on National Association of Home Builders is particularly ironic. In that case the Supreme Court reversed us for failing to defer to an agency's rational judgment. 551 U.S. 644, 667-70, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007). In addition to finding that our decision in that case injected an implied repeal into the statute, id. at 662-64, 127 S.Ct. 2518, the Court scolded us for “simply disregarding]” the agency’s reasonable interpretation of its governing statute, id. at 668, 127 S.Ct. 2518. The present case is the opposite side of the same coin. The majority here repaints an agency decision as an implied repeal in order to disregard the BIA's reasonable interpretation of its governing statute. The lesson to be gleaned from National Association of Home Builders is that “we defer to [an agency’s] reasonable interpretation,” not that we apply hyper-technical review to determine if the agency’s decision *1089 could be viewed as an implied statutory repeal. Id. at 671, 127 S.Ct. 2518.

. The majority also appears to argue that § 7344(b) must continue to apply or Congress’s reference to the ADAA in § 501(b) would be superfluous. However, this is not the only possible construction giving meaning to this language. Section 501(b) could also be read to apply the retroactivity provision of § 7344(b) to only the two definitional changes outlined in IMMAct § 501(b). Interpreting § 501(b), however, is not an issue properly raised before us; I would save a definitive construction to a panel informed by a decision of the BIA, a full record on the issue, and argument by counsel.